STATE EX REL. FERROCARRILES NACIQNALES DE MEXICO, *alias* NATIONAL RAILWAYS OF MEXICO, *alias* NATIONAL RAILROAD COMPANY OF MEXICO, a Corporation, Relator, v. CHARLES W. RUTLEDGE, Judge of the Circuit Court of the City of St. Louis, and MADISON INVESTING COMPANY, INC.—56 S. W. (2d) 28.

Division One, December 31, 1932.

1016

*George E. Mix* for relator.

*Grant & Grant* for respondents.

FERGUSON, C.—This is an original proceeding in this court whereby upon petition of the relator, National Railways of Mexico, a preliminary rule in prohibition issued. Respondent, a Judge of the Circuit Court of the City of St. Louis, made return setting out cause why our preliminary rule should not be made absolute. Thereupon by stipulation and joint motion of the parties a special commissioner was appointed to take testimony on the issues made by the pleadings. The report and findings of the special commissioner having been filed the cause was submitted on briefs.

It is admitted by the pleadings that the relator, National Railways of Mexico, is a corporation organized and existing under the laws of the Republic of Mexico with its principal office in Mexico City, Republic of Mexico; that at the time of the institution of the action against it, by the Madison Investing Company, in the Circuit Court of the City of St. Louis, out of which this proceeding arises, the National Railways of Mexico maintained an office in the city of St. Louis, with George B. Aleman in charge thereof; and that the Madison Investing Company is a corporation organized under the laws of the State of New York. In the course of this opinion we shall refer to the national Railways of Mexico as the Railways Company and the Madison Investing Company as the Investing Company.

On January 11, 1930, the Investing Company instituted an action, by attachment, against the Railways Company in the Circuit Court of the City of St. Louis. The petition is in 163 counts based upon 163 separate negotiable, promissory coupon notes. Judgment against the Railways Company is sought in the aggregate principal sum of $2,986 with interest thereon. Except as to dates and amounts the several counts are identical and it will suffice to disclose the nature of the action to here set out only the first count of the petition, as follows:

"For its first cause of action plaintiff states that on or about the 1st day of October, A. D. 1907, for value received, defendant executed its negotiable promissory coupon note, herewith filed, which was attached to a bond not yet due, and whereby defendant under its name Ferrocarriles Nacionales de Mexico, promised to pay to bearer in the City of New York, U. S. A., the sum of $22.50 in gold coin of the United States of America on the 1st day of July, 1914; that before maturity thereof plaintiff in due course became the owner and holder thereof; that thereafter, on the 1st day of July, 1914, plaintiff made demand in the City of New York upon defendant for the payment thereof, but that defendant failed and refused to pay the same, and that said note is still unpaid; that plaintiff is still the holder and owner of said note.

"Wherefore, plaintiff prays judgment against defendant in the sum of $22.50, together with interest at 6 per cent from the 1st day of July, 1914, together with costs."

An attachment bond in the sum of $6,000 was filed and approved and a writ of attachment, with summons, issued. Under the writ of attachment the First National Bank of St. Louis, the Missouri Pacific Railroad Company and the Southern Pacific Company were summoned as garnishees. The First National Bank filed an answer to the interrogatories stating that it was indebted to the Railways Company in the sum of $1,771.31 and was so indebted on the date of the service of garnishment. The Missouri Pacific Railroad Company denied it was indebted to the Railways Company in any amount and the Southern Pacific Company answering declared itself to be a foreign corporation and not subject to garnishment in this State. The summons was served, as shown by the return of the Sheriff of the City of St. Louis, as follows:

"Served this writ in the City of St. Louis, Missouri, on the within-named defendant, the Ferrocarriles Nacionales De Mexico, *alias* National Railways of Mexico, *alias* National Railroad Company of Mexico, a corporation (a Corporation), this 11th day of January, 1930, by delivering a copy of the writ and petition as furnished by the Clerk to Geo. B. Aleman, Gen'l Agent of the said defendant Corporation, he being in said defendant's usual business office and in charge thereof. The President or other Chief Officer of said Defendant could not be found in the City of St. Louis at the time of service."

The Railways Company then appearing specially in the Circuit Court of the City of St. Louis, and limiting its appearance to the purposes of the motion, filed a motion "to quash service of summons," which was overruled. The Railways Company thereupon applied to this court for a writ of prohibition and our preliminary writ was issued. The more pertinent parts of relator's petition are:

"Petitioner further shows that it was and is, as hereinabove stated, a corporation organized and existing under the laws of the Republic of Mexico for the purpose of constructing, owning and operating a railroad for transportation of freight and passengers. Its principal office is in the City of Mexico, Republic of Mexico. It owns lines of railways extending throughout the Republic of Mexico. No part of its said railroad runs into, through or traverses any part of the State of Missouri, and it has never been admitted to do business in the State of Missouri, nor has it consented to be sued in the State of Missouri, nor has it ever done any business in the State of Missouri, except as hereinabove stated.

"Petitioner further shows that at the time of the institution of the suit hereinabove described it maintained an office in the City of St. Louis, Missouri, which said office was at said time, and at the time of service of summons, in charge of the George B. Aleman mentioned in said return of summons as the man upon whom service of such summons was had; that said George B. Aleman was a solic-

iting freight agent, whose only business it was to solicit freight for transportation over the lines of the petitioner, Ferrocarriles Nacionales de Mexico, *alias* National Railways of Mexico, etc., a corporation, which lines as has hereinbefore been stated, are located entirely without the State of Missouri. The said George B. Aleman had no other business than that of soliciting such freight; he had no authority to and did not sell tickets; nor did he at any time have authority to receive or did he receive payment for the transportation of freight over the lines of your petitioner; he had no authority to nor did he issue bills of lading covering any shipments of freight from the State of Missouri over the lines of your petitioner; he had no authority to nor did he pay out any money for your petitioner; he had no authority to make contracts and he did not make contracts for your petitioner; and, as stated hereinabove, his sole business has been that of soliciting freight for transportation over your petitioner's lines in the Republic of Mexico, and no business of any other kind at any time was transacted in your petitioner's said office in the City of St. Louis, Missouri. . . .

"Petitioner further shows that it is against due process of law, as guaranteed to petitioner by the Fifth and Fourteenth Amendments to the Federal Constitution, to require your petitioner to submit to the jurisdiction of the St. Louis Circuit Court.

"Your petitioner states that the alleged one hundred and sixty-three causes of action set forth in the petition filed by the Madison Investing Company, Inc., Plaintiff v. Ferrocarriles Nacionales De Mexico, *alias* National Railways of Mexico, *alias* National Railroad Company of Mexico, a corporation, Defendant, state that during the year 1907 the defendant Railway Company executed negotiable promissory coupon notes which were attached to bonds not yet due, and whereby defendant Railway Company promised to pay to bearer in the City of New York, U. S. A., certain specified sums of money and that before maturity thereof the plaintiff, Madison Investing Company, in due course became the owner and holder thereof and is still the holder and owner thereof; that all of the witnesses who could testify for either the plaintiff or the defendant in said suit; resided and, as petitioner is informed and believes, still reside in the Republic of Mexico and City of New York, and that if said suit in the Circuit Court of the City of St. Louis be permitted to proceed to trial, the expense of transporting said witnesses to the City of St. Louis and returning them to the Republic of Mexico or to the City of New York, would be an unnecessary and unlawful burden upon your petitioner and upon the interstate and internation commerce in which your petitioner is engaged; that the witnesses which your petitioner would require exceed twelve in number; that many volumes of books, such as ledgers and other books of record and ac-

count, in daily use by your petitioner in the City of Mexico, would have to be transported from the City of Mexico, Republic of Mexico, to the City of St. Louis, Missouri; that all of the aforesaid witnesses are employed by your petitioner in the operation of its railroad and trains and if they should be required to come to the City of St. Louis, Missouri, to attend trial, other persons would have to be substituted in their place in the performance of their regular duties, which substitution would entail an additional expense and would be an additional burden to the interstate and internation commerce in which your petitioner is engaged.

"Your petitioner further shows that it has at no time entered its appearance in said cause pending in the Circuit Court of the City of St. Louis, Missouri, and that it has not been summoned to appear in said cause except as hereinabove set out. Your petitioner shows that said service of summons by the Sheriff of the City of St. Louis, Missouri, is wholly insufficient to require your petitioner's appearance in said cause in the Circuit Court of the City of St. Louis, Missouri. . . .

"Your petitioner shows that the aforesaid cause of Madison Investing Company, Inc., v. Ferrocarriles Nacionales De Mexico, *alias* National Railways of Mexico, *alias* National Railroad Company of Mexico, a corporation, is now pending in Division No. 1 of the Circuit Court of the City of St. Louis, Missouri, which said division is now presided over by the aforesaid Honorable Charles W. Rutledge, Judge of said Court; that the said Court, acting through the said Honorable Charles W. Rutledge as Judge thereof, is claiming to have authority to proceed to hear and determine said cause, and that the said plaintiff in said cause is claiming that said court, and particularly said division of said court, has authority to proceed under the rules of said court to a consideration of said cause, and the said Judge, Honorable Charles W. Rutledge, of said court will proceed with said cause and the determination thereof unless restrained by the orders of this Honorable Court.

"Petitioner shows upon the .facts hereinabove stated said Circuit Court of the City of St. Louis, Missouri, has no jurisdiction over the person of your petitioner, in said cause, and your petitioner therefore prays that a preliminary order may be entered," etc.

Omitting certain admissions to which reference has been made and statements relating to the various steps taken and proceedings had in the circuit court which we have hereinbefore related, the return is as follows:

"Comes now respondent, Charles W. Rutledge, Judge of the Circuit Court of the City of St. Louis, Missouri, and for his return to the preliminary rule in prohibition herein admits that he is a duly elected and qualified Judge of the Circuit Court of the City of St.

Louis, Missouri, assigned to and acting as Presiding Judge of Division No. 1 of said court; . . . .

"Respondent further admits that the said cause of Madison Investing Company v. Ferrocarriles Nacionales De Mexico, etc., is now pending in Division No. 1 of the Circuit Court of the City of St. Louis, Missouri, which said division is now presided over by this respondent, and that this respondent claims to have authority to proceed to hear and determine said cause and that Madison Investing Company, Inc., claims that said court has authority to proceed under the rules of said court to a consideration of said cause, but respondent denies each and every other allegation in relator's petition contained.

"This respondent specifically denies that relator is doing a railroad business in interstate or internation commerce; denies that relator has never done any business in the State of Missouri except as set forth in its petition; denies that the only business of George B. Aleman was to solicit freight for transportation over the lines of relator; denies that said George B. Aleman had no other business than that of soliciting freight; denies that said George B. Aleman had no authority to pay out any money for relator; denies that said George B. Aleman had no authority to make contracts for relator; denies that he did not make contracts for relator and denies that the sole business transacted in relator's office in the City of St. Louis, Missouri, was that of soliciting freight for transportation over relator's lines. . . .

"This respondent denies that if said suit in the Circuit Court of the City of St. Louis is permitted to proceed to trial the expense of transporting witnesses to the City of St. Louis and returning them to the City of Mexico or to the City of New York would be an unnecessary or unlawful burden upon relator or any burden upon interstate or internation commerce and denies that relator is engaged in interstate or internation commerce. This respondent denies, that the witnesses which relator would require for the trial of said cause would exceed twelve in number; denies that many volumes of books in daily use by relator in the City of Mexico will have to be transported from the City of Mexico to the City of St. Louis, Missouri; denies that the witnesses required by relator for the trial of said cause are employed by the relator in the operation of its railroad and trains. This respondent denies, that the service of summons by the Sheriff of the City of St. Louis is insufficient to require relator's appearance in said cause. . . .

"For further return, this respondent states that the lines of railroad operated by relator are wholly within the Republic of Mexico; that on the 11th day of January, 1930, relator had a usual business office in the City of St. Louis, Missouri, and that George B. Aleman

was the general agent of relator in charge of said office; that on said date relator had clerks and stenographers in said office for the transaction of its usual business in the City of St. Louis; that it had a bank account in the City of St. Louis in which deposits were made by said George B. Aleman and which was subject to checks drawn by said George B. Aleman and that relator was on said date engaged in business in the City of St. Louis. . . .

"This respondent further states that all of the notes mentioned in the 163 counts of said suit brought by Madison Investing Company against relator were payable in the City of New York and that none of them were payable in the Republic of Mexico; that under the laws of the Republic of Mexico and particularly Article 185 of the Code of Civil Procedure of the Republic of Mexico no suit can be brought in the Republic of Mexico on said coupon notes.

"This respondent further states that in a suit instituted by said Madison Investing Company, Inc., against relator in the Municipal Court of the City of New York, Borough of Brooklyn, Second District, on coupon notes similar to those which are the basis of the suit now pending in the Circuit Court of the City of St. Louis, relator, on the 21st day of May, 1929, filed a special entry of appearance and objected to the jurisdiction of said court on the ground that the relator was not engaged in business in the State of New York and thereafter the said court entered judgment in said cause dismissing the same for lack of jurisdiction over the person of relator.

"Wherefore, this respondent prays that the writ of prohibition herein be denied and that he be dismissed with his costs."

The reply "denies each and every allegation of fact in said return contained, with this exception, however: That the petitioner admits that in a similar proceeding instituted by the said Madison Investing Company against the National Railways of Mexico in the City of New York, Borough of Brooklyn, second district, the said court sustained petitioner's (National Railways of Mexico's) motion to quash."

At the hearing before the special commissioner the following undisputed facts were developed by the testimony. All the railroad lines and property owned or operated by the National Railways of Mexico is located wholly within the Republic of Mexico. It does not own any railroad lines, track, roadbed or warehouses or operate any railroad trains or cars in the United States. Railroad freight and passenger traffic which it receives from railroads operating in the United States is delivered to it by the American railroads across the boundary line in Mexico. It issues its bills of lading for freight from the United States to be carried by it in Mexico upon delivery of such freight to it on the Mexican side of the boundary and its freight charges begin at that point. The headquarters and princi-

pal office of the Railways Company is in Mexico City, Republic of Mexico. On January 11, 1930, the date of service of the summons contained in the writ of attachment, and for some time prior thereto, the Railways Company maintained offices in the city of St. Louis with George B. Aleman, as its representative, in charge. Aleman was designated as "General Freight Agent" and "Soliciting Freight Agent" for the St. Louis territory which embraces the city of St. Louis and the states of Missouri, Arkansas, Texas, Kansas, Oklahoma and the two Dakotas. The office force was composed of Aleman and an assistant, who served as interpreter and translator, and a stenographer. Upon requisition to the office of the company at Mexico City funds for the payment of the office expenses, rent, salaries, stationery and postage, were forwarded to Aleman and deposited by him in the First National Bank of St. Louis and used exclusively in the payment of such office expenses. Presumably it was such part of this fund as was then on deposit which was impounded by the garnishment served on the First National Bank. The Railways Company had no other office, agency or representation within this state. The relator says this St. Louis office was maintained for the sole purpose of soliciting freight and passenger traffic for its railroad lines in the Republic of Mexico and to supply information to shippers of freight into Mexico or persons desiring to travel in that country. To determine the matter a searching inquiry was made concerning the duties and authority and the nature and extent of the activities of Aleman and those there employed. Through the St. Louis office information was supplied to prospective shippers of freight from the St. Louis district into Mexico concerning freight rates and routes in Mexico and in promoting such traffic a representative from the St. Louis office would call on shippers and "assist them if they wanted information as to how to ship to Mexico" and "advise them what papers they would have to fix." Persons contemplating traveling by rail to and within Mexico, upon making inquiry, were informed as to fares, routes, places of interest, suggested historical points to visit, and climatic and weather conditions prevailing there at various times of the year. At intervals a circular was printed and issued "advising that a new service had been established" or changes in train schedules made and containing other matter of information to shippers or travelers. Such seems to have been the primary purpose and service of this office. Neither Aleman nor the other employees at the St. Louis office had authority to do so and did not "issue or handle any bills of lading," sell any passenger tickets or "receive or collect" any freight charges or passenger fares or make or enter into any contracts for or on behalf of the Railways Company. They did not, and were not authorized to, undertake "any arrangements for shippers," that being left entirely to the shipper and the local and initial American rail carrier.

The Railways Company issued no bills of lading in St. Louis or "anywhere in the United States." If freight charges or passenger fares for carriage in Mexico were prepaid they were paid to and received by the initial American carrier and the payments therefor made by such American carrier direct to the office of the Railways Company in Mexico. The St. Louis office had no authority respecting and "nothing whatsoever to do with freight accounts, carrying accounts or charges by the local Railways and the National Railways of Mexico." When losses or damages occurred in handling shipments from Mexico consigned to any point in the St. Louis territory it was necessary for the consignee to make claim therefor to the office at Mexico City. The St. Louis office did not undertake, and was not authorized, to investigate, handle or adjust such claims. The manager of the St. Louis office testified that when cars of American railroads sent to points in Mexico over the lines of the National Railways of Mexico reached their destination the Railways Company would inspect such cars before returning them to the American Railways and if "anything is found wrong with the car, a wheel loose or the roof leaking we repair it as a matter of accommodation to the American lines and charge the American lines the actual cost, otherwise the car would have to be returned empty to the American lines;" that "local railroads occasionally turned checks over" to Aleman in payment of these charges. Presumably statements of the items and the amount of such charges were forwarded to the local railroads from the Mexico City office. Aleman would deposit such checks in a local bank. The inference is that the checks represented small items and the witness stated that they were received by the St. Louis office "as a matter of accommodation to local railroads" and that "as soon as he (Aleman) had enough money in the bank" from that source he would remit same to the office of railroad company at Mexico City. It does not appear that these items were sent to the St. Louis office for collection or that the St. Louis office undertook to collect them or had any authority to make claims therefor or adjust same. The Railways Company has never been admitted, by license or certificate, to do or engage in business, as a foreign corporation, in this State; has never consented to be sued in this State and has not filed any suit in any court of the State.

Relator's contention is that the assumption of jurisdiction by the Circuit Court of the City of St. Louis to hear and determine the action brought against it by the Investing Company violates the due process clause of the Fourteenth Amendment as well as the Commerce clause, of the Federal Constitution.

We have an action by attachment brought in the Circuit Court of the City of St. Louis by the Investing Company, a foreign corporation, as plaintiff, against the Railways Company, a foreign corporation, as defendant. Our statute, Section 743, Revised Statutes 1929,

provides: ".Any corporation incorporated by any other state or country, and having property in this State, shall be liable to be sued, and the property of the same shall be subject to attachment, in the same manner as individuals, residents of other states or countries, and having property, are now liable to be sued, and their property subject to be attached." Section 721, Revised Statutes 1929, fixes the venue of actions by attachment as "the county in which such property may be found." Section 1274, Revised Statutes 1929, provides that: "The plaintiff in any civil action may have an attachment against the property of the defendant. . . . Where the defendant is a corporation, whose chief office or place of business is out of this State." ■ "All suits, whether by proceedings *in rem* or *in personam,* are allowed to be brought in any county of this State against a nonresident, and the mere fact of the party's nonresidence, without more, is one of the grounds for an attachment. . . . From an early day in this State it has been ruled that one nonresident may sue another by attachment in this State. Posey v. Buckner, 3 Mo. 604; Graham v. Bradbury, 7 Mo. 281; though the statute concerning attachments contains no mention of nonresidents as suitors in our courts." [Baisley v. Baisley, 113 Mo. 544, 21 S. W. 29.] ■ As the Railways Company had property in the city of St. Louis subject to attachment it follows that under the foregoing statutes and decisions of this court the Investing Company may properly prosecute its action by attachment in the circuit court of that city. ■ But relator invokes the Commerce Clause of the Federal Constitution (Sec. 8, Art. 1), whereby the power "to regulate commerce with foreign nations and among the several states" is reserved to "The Congress," as a bar to the maintenance of the action and cites the following decisions of the Supreme Court of the United States in support of this contention: Davis v. Farmers' Co-Operative Co., 262 U. S. 312; Atchison, Topeka & Santa Fe Railway Co. v. Wells, 265 U. S. 101; Michigan Central Railroad Co. v. Mix, 278 U. S. 492; and Denver & Rio Grand Western Railroad Co. v. Terte, 284 U. S. 284.

In the Davis case the court ruled the constitutionality of a statute of the State of Minnesota which provides that: "Any foreign corporation having an agent in this State for the solicitation of freight and passenger traffic or either thereof over its lines outside of this State, may be served with summons by delivering a copy thereof to such agent." The issues and facts are stated as follows: "Whether this statute, as construed and applied, violates the Federal Contitution is the only question for decision. The Atchison, Topeka & Santa Fe Railway Company is a Kansas corporation engaged in interstate transportation. It does not own or operate any railroad in Minnesota; but it maintains there an agent for solicitation of traffic. In April, 1920, suit was brought by another Kansas corpora-

tion in a court of Minnesota. ... . Service was made pursuant to the Minnesota statute. The recovery sought was for loss of grain shipped under a bill of lading issued by the carrier in Kansas for transportation over its line from one point in that State to another. So far as it appears the transaction was in no way connected with Minnesota or with the soliciting agency located there.'' The defendant appeared specially and moved to dismiss the suit for want of jurisdiction. One ground of the motion, and that upon which the Supreme Court based its decision, was that the statute violated the Commerce Clause of the Federal Constitution. In holding that the Minnesota statute violates the commerce clause, the court said:

''Solicitation of traffic by railroads, in States remote from their lines, is a recognized part of the business of interstate transportation. [McCall v. California, 136 U. S. 104.] As construed by the highest court of Minnesota, this statute compels every foreign interstate carrier to submit to suit there as a condition of maintaining a soliciting agent within the State. Jurisdiction is not limited to suits arising out of business transacted within Minnesota. . . . It is asserted, whatever the nature of the cause of action, wherever it may have arisen, and although the plaintiff is not, and never has been a resident of the State. . . . This condition imposes upon interstate commerce a serious and unreasonable burden which renders the statute obnoxious to the commerce clause. [Compare Sioux Remedy Co. v. Cope, 235 U. S. 197, 203.]

''That the claims against interstate carriers for personal injuries and for loss and damage of freight are numerous; that the amounts demanded are large; that in many cases carriers deem it imperative, or advisable, to leave the determination of their liability to the courts; that litigation in States and jurisdictions remote from that in which the cause of action arose entails absence of employees from their customary occupations; and that this impairs efficiency in operation, and causes, directly and indirectly, heavy expense to the carriers; these are matters of common knowledge. Facts, of which we, also, take judicial notice, indicate that the burden upon interstate carriers imposed specifically by the statute here assailed is a heavy one; and that the resulting obstruction to commerce must be serious. During Federal control absences of employees incident to such litigation were found, by the Director General, to interfere so much with the physical operation of the railroads, that he issued General Order No. 18 (and 18A) which required suit to be brought in the county or district where the cause of action arose or where the plaintiff resided at the time it accrued. That order was held reasonable and valid in Alabama & Vicksburg Ry. Co. v. Journey, 257 U. S. 111. The facts recited in the order, to justify its issue, are of general application, in time of peace as well as of war.

"The fact that the business carried on by a corporation is entirely interstate in character does not render the corporation immune from the ordinary process of the courts of a State. [International Harvester Co. v. Kentucky, 234 U. S. 579.] The requirements of orderly, effective administration of justice are paramount. . . . But orderly, effective administration of justice clearly does not require that a foreign carrier shall submit to a suit in a State in which the cause of action did not arise, in which the transaction giving rise to it was not entered upon, in which the carrier neither owns nor operates a railroad, and in which the plaintiff does not reside. The public and the carriers are alike interested in maintaining adequate, uninterrupted transportation service at reasonable cost. . . . Avoidance of waste, in interstate transportation, as well as maintenance of service, has become a direct concern of the public. With these ends the Minnesota statute, as here applied, unduly interferes. By requiring from interstate carriers general submission to suit, it unreasonably obstructs, and unduly burdens, interstate commerce."

The facts in the Wells case are that "Wells, a citizen and resident of Colorado employed by the Atchison, Topeka & Santa Fe Railway Company was injured while performing his duties in New Mexico. He sued the company in a state court of Texas but could not make personal service on it within that state. Wells procured from the same court a writ of garnishment to a Texas railroad company whose line connected with the Santa Fe, which had in its possession Santa Fe rolling stock; and which owed to it large sums on traffic balances. Thereafter constructive service was made upon the Santa Fe by publication. The Santa Fe did not appear to the action; and judgment in the sum of $4,000 and costs was entered against it by default." The Supreme Court of the United States said:

"The rolling stock held by the garnishee was then being used in interstate commerce and the amount due on traffic balances arose out of transactions in such commerce. These facts did not render the property immune from seizure by attachment or garnishment. [Davis v. Cleveland, Cincinnati, Chicago & St. Louis Ry. Co., 217 U. S. 157.] But the writ of garnishment is void because of the purpose for which it was invoked. The Santa Fe is a Kansas corporation. It had not been admitted to Texas as a foreign corporation. It had not consented to be sued there. It did not own or operate any line of railroad within the State; and has no agent there. The Texas statutes concerning garnishment were construed and applied in the Wells suit so as to permit a citizen and resident of another state to prosecute in Texas a cause of action which arose elsewhere against a railroad corporation of another State, which is engaged in interstate commerce, which neither owns nor operates a railroad in Texas, and which had not consented to be sued there. For the rea-

sons stated in Davis v. Farmers Co-Operative Co., 262 U. S. 312 (decided since the entry of the judgment here under review) such a suit necessarily and unreasonably burdens interstate commerce; and the statute as construed and applied is invalid. . . . The garnishment was void because seizure of the rolling stock and credits for the purpose of compelling the Santa Fe to submit to the jurisdiction of the court in the Wells suit interfered unreasonably with interstate commerce.''

In the Mix case Thomas Doyle, a switchman employed by the Michigan Central Railroad was killed in Michigan while in the performance of his duties. He was then a resident of Lansing in that state where his wife lived. The widow removed to Missouri, was here appointed administratrix and, as such, brought an action for damages against the railroad in the Circuit Court of the City of St. Louis. ''The Railroad is a Michigan corporation. No part of its line runs into Missouri.'' It had ''not consented to be sued there; has never been admitted to do business there and has never done any business there except solicit freight for transportation in interstate commerce over its lines in other states. For this limited purpose it maintains an office at St. Louis. Upon its agent in charge of that office the sheriff made service of summons.'' Application by the Railroad to this court for a writ of prohibition was denied without an opinion. Upon *certiorari* to the Supreme Court of the United States that court said:

''The railroad claims that it was not subject to suit in Missouri, among other reasons, because to maintain it would violate the commerce clause. In order to show that trial of the action for damages in Missouri would entail a heavy burden upon, and unreasonably obstruct, interstate commerce, it set forth facts substantially identical with those held sufficient for that purpose in Davis v. Farmers Co-Operative Co., 262 U. S. 312, and Atchison, Topeka & Santa Fe Ry. Co. v. Wells, 265 U. S. 101. From those cases that here involved differs only in this: There, the plaintiff was a non-resident. Here, the plaintiff had become a resident in Missouri after the injury complained of, but before instituting the action. For aught that appears her removal to St. Louis shortly after the accident was solely for the purpose of bringing the suit; and because she was advised that her chances of recovery would be better there than they would be in Michigan. The mere fact that she had acquired a residence within Missouri before commencing the action does not make reasonable the imposition upon interstate commerce of the heavy burden which would be entailed in trying the cause in a State remote from that in which the accident occurred and in which both parties resided at the time.''

Coming to the latest case cited, the Denver & Rio Grande Western Railway Co. v. Terte, supra, the facts in that case show that Curtis, by an action filed in the Circuit Court of Jackson County, Missouri,

sought to recover damages for personal injuries alleged to have resulted from the joint negligence of the defendants Rio Grande Railroad Company, and the Santa Fe Railway Company, while he was employed by them at an interlocking track and signal plant near Pueblo, Colorado. After being injured at Pueblo and before instituting this action against the two companies Curtis moved to and became a *bona fide* resident and citizen of Missouri. "A writ of attachment against the Rio Grande was served by garnishee process upon several railroad companies said to be indebted to it. Summonses for both defendants were served upon their agents." Defendants appeared specially in the circuit court and "moved to quash the attachment and summonses and presented affidavits to support their motions. The plaintiff filed counter-affidavits. "It appeared that properly to defend the cause would require attendance of witnesses from Colorado at large expense." The motions were overruled and thereupon defendants applied to this court for a writ of prohibition on the ground that if the cause proceeded to trial "an undue burden on interstate commerce would result." The petition was denied, without opinion. Upon *certiorari* to the Supreme Court of the United States that court said:

"The Santa Fe, a Kansas corporation, owns and operates railroad lines in Missouri, Kansas, Colorado and other states. It is licensed to do business in Missouri and has an office and agents in Jackson County. These agents transact the business ordinarily connected with the operation of a carrier by railroad.

"After being injured at Pueblo, and before instituting his action against the railroad companies, Curtis removed to and became a *bona fide* resident and citizen of Missouri.

"According to the doctrine approved in Hoffman v. Foraker, 274 U. S. 21, we think the Santa Fe was properly sued in Jackson County. The Supreme Court committed no error of which we can take notice by refusing to prohibit further prosecution of the action against that company. The mere fact that the Santa Fe was named a codefendant with the Rio Grande was not enough to defeat jurisdiction of the court over the former.

"Under the rule approved in Michigan Central Railroad Co. v. Mix, 278 U. S. 492, the Rio Grande properly claimed exemption from suit in Jackson County. It was not necessary to join the two railroad companies in one action. Whatever liability exists is several. The prohibition against burdening interstate commerce cannot be avoided by the simple device of a joint action. Nor can this be evaded merely by attaching the property of the nonresident railroad corporation. Obviously, the burden and expense which the carrier must incur in order to make defense in a State where the accident did not occur has no relation to the nature of the process used to bring it before the court.

"The alleged residence in Missouri of persons whose testimony plaintiff supposed would be necessary to prove his claim was not enough to justify retention of jurisdiction by the circuit court. While this circumstance might enable plaintiff to try his cause there with less inconvenience than, elsewhere, it would not prevent imposition of a serious burden upon interstate commerce.

"And, we have held, it is the infliction of this burden that deprives the courts of jurisdiction over cases like this. [Davis v. Farmers Co-Operative Co., 262 U. S. 312.]"

Seeking to apply the principle announced in the foregoing cases relator takes the position that if our statutes relating to attachments be so applied and construed as to permit the circuit court to entertain jurisdiction and proceed with the trial of the attachment action commerce with a foreign nation will thereby be unreasonably obstructed and unduly burdened and that the infliction of this burden deprives the court of jurisdiction (Denver and Rio Grande Western Railroad Company v. Terte, supra), and to that extent, our attachment statutes are violative of the commerce clause of the Federal Constitution. The evidence shows that the Railways Company owns and operates extensive lines of railroads wholly within the Republic of Mexico. None of its lines enter the United States and persons traveling from the United States into Mexico by rail and freight shipments from the United States into Mexico by rail, carried by the relator company in Mexico, are delivered to it by the American railroads at points across the boundary in Mexico. Certainly the Congress o` the United States does not have any power to regulate the operation of relator's lines. In reasoning the case of Davis v. Farmers Co-Operative Company, supra, the court says: "Avoidance of waste in interstate transportation as well as maintenance of service has become a direct concern of the public." But our Federal government has neither responsibility nor power in the maintenance of railroad service upon relator's lines. If it be considered that any impairment of the service upon relator's lines connecting in Mexico with American railroads delivering passengers and freight to the relator for carriage is a burden upon commerce with a foreign nation nevertheless it does not appear that by the prosecution of the attachment suit the operation of relator's lines will be in any manner interfered with or affected. ■ We know as a matter of common knowledge that no employees engaged in the actual operation of relator's trains, yards, stations, shops or warehouses or the maintenance of roadbeds and tracks, would be required as witnesses in making a defense to the action upon these negotiable coupon notes and that the physical operation of relator's railroads would not thereby be interfered with. ■ There is nothing in the evidence tending to show that the continuity of railroad service between Mexico and the United States would be hampered by the prosecution of the attachment suit

nor does the attachment levy affect any instrumentality necessary to the physical operation of relator's railroads. The property attached is a balance of money on deposit in a bank in the city of St. Louis. It nowhere appears that relator denies the validity of the negotiable instruments sued upon, its obligation thereon, that same are due and unpaid or that the Investing Company is the legal holder thereof. Such defense, if any, as it may have is not disclosed. The suit is based upon negotiable instruments for liquidated amounts and there can be no presumption of a defense. Any possible defense would be affirmative and none is suggested. Nevertheless relator alleges, *inter alia,* in its petition here that: "All the witnesses who could testify," in its behalf reside in the Republic of Mexico and city of New York and "the expense of transporting said witnesses to the City of St. Louis and returning them to the Republic of Mexico or the City of New York would be an unnecessary and unlawful burden upon petitioner and upon interstate and internation commerce." The coupons sued upon were payable in the city of New York, in gold coin of the United States. The cause of action arose in the State of New York. We learn from admissions in the pleadings and statements found in the briefs that suit, *in personam,* was brought on these coupons in that state but the court there held that the Railways Company was not doing business in that state so as to make it amenable to suit there and dismissed the suit for want of jurisdiction. It does not appear that the mere fact that suit by attachment was filed in a state other than that in which the cause of action arose would entail any heavier burden of expense upon relator than would a trial in the State of New York where the cause of action arose while in point of distance the city of St. Louis is nearer to the relator's domicile than the State of New York. Though the allegations of relator's petition relative to the necessity of bringing witnesses and records from the city of Mexico in the event of trial in the city of St. Louis were specifically denied by the return there was no testimony offered to sustain the allegations of the petition in that respect. The only witness offered by relator, its agent in charge of its St. Louis office. testified that he did not know "of any defense" to the action brought on "these bond coupons" or "whether witnesses would have to come from Mexico City" or any other place.

Unless relator is exempted from the operation of our attachment statutes on the ground that the action brought thereunder imposes an unreasonable and undue burden upon commerce with a foreign nation it must if the circuit court has, under our statutes, properly acquired jurisdiction, "submit to the requirements of orderly, effective administration of justice though thereby interstate" or internation commerce "is incidentally burdened." [Hoffman v. Foraker, 274 U. S. 21, 23; St. Louis, Brownsville & Mexico Ry. Co. v. Taylor, 266 U. S. 200.] Under the facts we think it does not appear that the pro-

ceeding by attachment necessarily and unreasonably obstructs and interferes with, or inflicts an undue burden upon, commerce with a foreign nation so as to deprive the Circuit Court of the City of St. Louis of jurisdiction, make relator immune to the suit by attachment brought there and entitle it to have its property in Missouri "put apart in a kind of civil sanctuary." [Davis v. Cleveland, Cincinnati, Chicago & St. Louis Ry. Co., 217 U. S. 157.] An "essential service of foreign attachment laws is to reach and arrest the payment of what is due and might be paid to a non-resident to the defeat of his creditors." [King v. Cross, 175 U. S. 396.] So in the attachment proceeding under consideration legal necessity moves the plaintiff Investing Company to resort, as we think it had a right to do, to the attachment statutes of this State to "reach and arrest" the debt of the St. Louis bank to the Railways Company subject to the establishment of plaintiff's claim.

■ Relator's further contention is that the circuit court has not, under the facts and the requirements of our statutes relating to proceedings by attachment, acquired jurisdiction to hear and determine the attachment suit and it is in this connection that the protection of the due process clause of the Federal Constitution is invoked. "Unless waived by a general appearance, or otherwise, process is necessary in order to acquire jurisdiction." [50 C. J. p. 446.] " 'Due process of law' requires that service of process shall always be made except when it may be, and is, waived. Only by appearance, or by service of process can a court obtain jurisdiction to adjudicate upon the rights of a defendant as involved in the action brought." [50 C. J. p. 467.] Absent a general appearance, or waiver of process, by the defendant, there must be service of process on defendant in some mode authorized by law or the court cannot proceed. The service of such process is always a prerequisite to jurisdiction over either the person or property of a defendant. [15 C. J. p. 798.] The Railways Company did not waive process in the attachment suit by a general appearance or otherwise and it is denied that the service of process upon which the circuit court rests its claim of jurisdiction is sufficient. The attachment writ contained a summons "of the nature and effect of an ordinary summons." [Sec. 1291, R. S. 1929.] Personal service of this summons was attempted "by delivering a copy of the writ and petition" to defendant's agent Aleman, who was in charge of its office in the city of St. Louis. The attachment writ was executed by the aid of garnishment whereby the debt owed by the St. Louis bank to the Railways Company was attached. While the *res* must be properly attached, that is not all that is required. "The property must be attached and the defendant notified. . . . The law requires both of these steps to be taken before the court can proceed to render a judgment in an attachment proceeding." [Givens v. Harlow, 251 Mo. 231, 158 S. W. 355.] In the attachment suit

brought against relator it appears that the first step was properly taken. ■ The second is challenged. Our statutes provide for service of process upon a foreign corporation in an attachment suit, that is that defendant may be notified, by personal service of the summons contained in the writ of attachment, if obtainable within this State (Secs. 1296 and 728, R. S. 1929) or if personal service cannot be had the defendant may be notified by publication. [Secs. 738 and 739, R. S. 1929.] If personal service is sought, Section 1296, supra, directs that in attachment, "the writ and petition shall be served upon the defendant as an ordinary summons." ■ The fourth subdivision of Section 728, supra, of the general Code of Civil Procedure, specifies the manner and conditions under which personal service of summons may be obtained upon a foreign corporation as follows: "Where the defendant is a corporation . . . organized under the laws of any other state or country and having an office and doing business in this State" service of summons may be made "by delivering a copy of the writ and petition to any officer or agent of such corporation . . . in charge of any office or place of business . . . and when had in conformity with this subdivision, shall be deemed personal service against such corporation and authorize the rendition of a general judgment against it." Thus a foreign corporation becomes amenable to personal service only if it is doing business within this State and the validity of the service under which the circuit court claims to have acquired jurisdiction in this attachment suit depends upon whether, as a matter of fact, the Railways Company was doing business within this State in such a manner and to such an extent as to warrant the inference that through its agents it was present within this State and subject to the service of process here. [Green v. Chicago, Burlington & Quincy Ry. Co., 205 U. S. 530.] ■ The question whether the Railways Company was doing business within this State is "not one of local law or of statutory construction" but is "one of due process of law, under the Constitution of the United States." [Hall v. Wilder Mfg. Co., 316 Mo. 812, 293 S. W. 760.] The following was quoted with approval in the Hall case, supra: " 'Whether such a corporation (a foreign corporation) is doing business in the State is a question of jurisdiction, and in its last analysis it is one of due proces of law under the Constitution of the United States.' [North Wisconsin Cattle Co. v. Oregan Short Line Co., 117 N. W. l. c. 392.] 'But it is only when the foreign corporation is doing business in the State that service may be made upon its agent, and in connection with the questions of jurisdiction it is held that what is "doing business" is a question of due process of law under the Federal Constitution. [Grant v. Cananea Co., 117 N. Y. App. Div. 576; Conley v. Mathiesen Alkali Works, 190 U. S. 406.]' [Wold v. J. B. Colt Co., 114 N. W. 243.]"

1036

■ While no all embracing rule has been laid down as to what constitutes doing business by a foreign corporation so as to make it amenable to personal service of process within a given jurisdiction and a solution of the question depends upon the facts of the particular case yet the general rule is recognized that to constitute "doing business" the foreign corporation must have entered the State and engaged there in carrying on and transacting, through its agents, the ordinary business in which it is engaged and the cases run with much unanimity to the effect that a foreign railroad corporation which has no tracks or railroad property within the State and operates none of its ordinary railroad business there is not doing business in the State in the sense that liability "to personal service is incurred" because it maintains an office and employs agents there to advertise its business and "solicit and procure passengers and freight to be transported over" its lines without the State. [Green v. Chicago, Burlington & Quincy Ry. Co., 205 U. S. 530; St. Louis & Southwestern Ry. Co. v. Alexander, 227 U. S. 218; Philadelphia & Reading Ry. Co. v. McKibbin, 243 U. S. 264, 268; McGuire v. Great Northern Ry. Co., 155 Fed. 230; Patrola Mfg. Co. v. Norfolk & W. Ry. Co., 250 Fed. 273; Cancelmo v. Seaboard Air Line Ry., 12 Fed. (2d) 166; Smart v. Florida East Coast Ry. Co., 240 Mich. 542, 215 N. W. 390; Thurman v. Chicago, M. & St. P. Ry. Co., 254 Mass. 569, 151 N. E. 63; North Wisconsin Cattle Co. v. Oregon Short Line Railroad Co., 105 Minn. 198, 117 N. W. 391; Abraham Bros. v. Southern Ry. Co., 149 Ala. 547, 42 So. 837; Atlantic Coast Line R. Co. et al. v. Richardson, 121 Tenn. 448, 117 S. W. 496.]

The uncontroverted facts bearing upon the much-mooted "doing business" have been fully set out. The testimony shows that the St. Louis agency had no authority to and did not handle or in any manner whatsoever represent the Railways in the settlement, collection or payment of traffic balances or carrying charges between it and American railroads or the negotiation and adjustment of any claims by or against the Railways Company nor did it make any purchases or enter into any contracts on behalf of the Railways Company in connection with transportation. It neither issued or arranged for bills of lading or sold tickets. It did not so much as make any contracts or arrangements of any kind whatsoever for transportation over the Railways Company lines or collect any passenger or freight charges therefor or receive or deliver any shipments. The activities of the St. Louis office are fairly described as advertising, supplying information as to rates, schedules and travel in Mexico; advising as to requirements for shipping freight into or for passengers entering Mexico by rail and the solicitation and stimulation of business to be routed over the lines of the Railways Company in Mexico and was in substance merely the solicitation of business. The only action on the part of the St. Louis office which it is claimed tends to sup-

port an inference that the Railways Company through its agents was engaged in the transaction of some substantial part of its ordinary business in this State is that for the convenience of local railroad companies that office occasionally received checks from local railroads, in small amounts, covering charges made by the Railways Company for necessary emergency repairs upon rolling stock of the local railroads, sent into Mexico over relator's lines, which sums were remitted to the Mexico City office by the St. Louis agency. These repairs were made in Mexico, at actual cost and for the accommodation of American railroads. Apparently statements of the amount of such charges and the items composing same were made up and forwarded by the Mexico City office direct to the American railroads operating in the St. Louis territory. The agents in the St. Louis office had no authority in the premises, either to attend the collection or act for or bind the Railways Company in any negotiations or adjustments relative thereto. In handling such remittances the St. Louis office seems to have served merely as a convenient conduit. Such merely incidental service by the St. Louis office can hardly, we think, be classed as the transaction of any essential or substantial part of relator's ordinary business through its agents in this State and did not affect the character of the St. Louis office as a soliciting agency.

We hold therefore that under the facts the Railways Company was not doing business in this State, through its St. Louis agency, so as to make it amenable to personal service of summons in this State and that the attempted service of the summons, contained in the writ of attachment, upon relator's agent in charge of that office did not meet the requirements of our statutes as to process and notice to the defendant in the attachment suit so as to give the Circuit Court of the City of St. Louis jurisdiction to proceed in the hearing and trial of the attachment suit upon such service.

Respondent says that relator is bound by the ruling of the circuit court on the question of jurisdiction. ''The general rule is that an application for a writ of prohibition will not be considered unless a plea to the jurisdiction has been filed and overruled in the lower court or the inferior court has been asked in same form, without avail, to refrain from further proceeding or dismiss the same.'' [State ex rel. Brncic v. Huck, 296 Mo. 374, 246 S. W. 303.]

The preliminary rule is made absolute unless and until valid service of notice be had on defendant. *Sturgis* and *Hyde, CC.,* concur.

PER CURIAM:—The foregoing opinion by FERGUSON, C., is adopted as the opinion of the court. All of the judges concur.