EARL R. FISK v. WELLSVILLE FIRE BRICK COMPANY, a Corporation, Appellant.—152 S. W. (2d) 113.

Division One, June 12, 1941.

*S. S. Nowlin, Glover E. Dowell* and *Wayne C. Smith, Jr.,* for appellant.

74

*Baker & Baker* and *George P. Adams* for respondent.

BRADLEY, C.—This is a suit on an Illinois judgment for $2555.18. The trial court found for plaintiff and defendant appealed to the St. Louis Court of Appeals. The Court of Appeals transferred to the Supreme Court on the theory that the construction of the due process clause of the Fourteenth Amendment of the Federal Constitution is inherently involved. [See Fisk v. Wellsville Fire Brick Company (Mo. App.), 145 S. W. (2d) 451.]

Defendant is a Missouri corporation and operates a fire brick plant just outside Wellsville, Montgomery County, Missouri. In October, 1936, defendant sold an order of fire brick to the Gardner-Denver Company, Quincy, Illinois, to be used in the construction of core ovens. In order to make the sale, defendant agreed to and did construct the ovens at Quincy, and sent its foreman, Harry Miller, to Quincy, to do the work. Miller was given authority to employ the necessary labor and did so. He commenced work on October 8th and finished December 14, 1936, and immediately returned to Wellsville,

Missouri. This work was the only business that defendant did in Illinois, and in doing the work defendant did not ask for and was not granted any permit to do business in Illinois, and named no agent upon whom process against it could be served in Illinois.

Among defendant's employees at Quincy was plaintiff who, in the course of the work, was injured by a falling scaffold, and filed compensation claim, under the Illinois Workmen's Compensation Act, against defendant and its insurer, the American Mutual Liability Insurance Company, and the Gardner-Denver Company. Proceedings on the claim resulted in an award for $2055.18, in favor of plaintiff and against defendant only. Defendant's insurer was let out because its policy covered accidents in Missouri only. Judgment on the award was obtained in the Circuit Court of Adams County, Illinois, and in addition to obtaining judgment on the award, plaintiff obtained judgment for $500 attorney's fee, making the total judgment $2555.18. This judgment is the basis of the present cause.

 The defense is that neither the Illinois industrial commission nor the Illinois circuit court had jurisdiction over the person of defendant, and therefore, had no power to make the award or to enter the *in personam* judgment. Defendant contends that it was not, legally speaking, doing business in Illinois while constructing the ovens, and was, therefore, not an employer under the Illinois Workmen's Compensation Act; that it did not appear or enter its appearance in any of the Illinois proceedings; and that it was not legally served with process. On the other hand, plaintiff contends that defendant, by constructing the ovens in Quincy, became an employer under the Illinois Workmen's Compensation Act; that defendant entered its appearance at the hearing on the compensation claim; and that it was legally served with process. If defendant did not enter its appearance, as claimed by plaintiff, and was not legally served with process, then to enforce a judgment based upon such proceedings would deprive defendant of due process under the Fourteenth Amendment. [State ex rel. Ferrocarriles Nacionales De Mexico v. Rutledge et al., 331 Mo. 1015, 56 S. W. (2d) 28, l. c. 37, 85 A. L. R. 1378.] In the situation, we think that the Court of Appeals properly transferred. [Constitution, Sec. 12, Art. 6, and Sec. 5, Amendment, 1884.]

As indicated, three questions are presented: (1) Was defendant *doing business* in Illinois at the time of plaintiff's injury, which question here means, Was defendant, while constructing the ovens, an employer under the Illinois Workmen's Compensation Act? (2) Did defendant enter its appearance at the hearing on plaintiff's compensation claim? (3) Was defendant so served with process as to give jurisdiction over its person? We shall dispose of these questions in the order stated.

■ Was defendant, while constructing the ovens, an employer under the Illinois Workmen's Compensation Law? Among the definitions of employer in Sec. 141, Chap. 48, Rev. Stat. Ill., 1937, is this: "The term 'employer' as used in this act shall be construed to be . . . Every . . . private corporation . . . who has any person in service . . . and who is engaged in any of the enterprises or businesses enumerated in section three (3) of this act." Section 3 of the act is Sec. 139 of the 1937 Rev. Stat., which section provides, among other things, that the provisions of the act "shall apply automatically and without election to . . . remodeling (or) altering . . . any structure (and to) . . . construction . . . work." Defendant's assistant secretary, Kohl, called as a witness for plaintiff, testified that the work defendant did at Quincy "was the construction of core ovens;" that "in connection" with the sale of the brick defendant "did actually construct the core ovens." We think that defendant, while engaged in constructing the core ovens in Quincy, was an *employer* within the meaning of that term as used in the Illinois Workmen's Compensation Act.

■ Did defendant enter its appearance at the hearing on plaintiff's compensation claim? Shortly before filing the claim for compensation, plaintiff's attorney, Mr. Nichols, took up the matter of the claim with Mr. Goeblins, an officer of the Gardner-Denver Company at Quincy. Goeblins contacted defendant at Wellsville, Missouri, and defendant's manager, Mr. McMullen, and its attorney, Mr. Nowlin, went to Quincy for a conference with Goeblins and Nichols to ascertain if a compromise settlement could be reached, but no agreement was reached.

A hearing was had on the claim before an arbitrator at Quincy. The Gardner-Denver Company appeared by its insurer. Defendant's insurer appeared on its own behalf, but not for defendant, although defendant had theretofore directed its insurer to represent it at the hearing. Mr. Nowlin, defendant's attorney, was, for a short time, in the court room in Quincy, where the hearing was had, but did not enter the appearance of defendant and took no part in the hearing. There is no claim that defendant made any appearance before the Illinois commission when the lump sum award was made or that defendant made any appearance in the Illinois circuit court when judgment was entered on the award and for attorney's fee. Plaintiff, in the brief, says that when defendant's insurer, at defendant's request, "appeared before the arbitrator its appearance was the appearance" of defendant. Such would be so, if the insurer had appeared *for* defendant, but as stated, the insurer did not appear for defendant, but for itself only. We rule that defendant did not enter its appearance.

■ Was defendant so served with process as to give jurisdiction over its person? ■ The Illinois Workmen's Compensation Act pro-

vides (Sec. 156 (i), Chap. 48, Rev. Stat. 1937): "Each party, upon taking any proceedings or steps whatsoever before any arbitrator, committee of arbitration, industrial commission or court, shall file with the industrial commission his address, or the name and address of any agent upon whom all notices to be given to such party shall be served, either personally or by registered mail, addressed to such party or agent at the last address so filed with the industrial commission: Provided, that in the event such party has not filed his address, or the name and address of an agent, as above provided, service of any notice may be had by filing such notice with the industrial commission."

For service in the compensation claim plaintiff proceeded under Sec. 156 (i) on the theory that this section authorized service on a foreign corporation, although such corporation had not filed with the commission its address or the name and address of a service agent. All notices served on the commission were forwarded by registered mail to defendant at Wellsville, Missouri, and defendant turned these over to its attorney, Mr. Nowlin, who sent the notices to defendant's insurer with direction, as stated, to represent it in the matter of the claim for compensation.

Elk River Coal & Lumber Co. v. Funk et al., 222 Iowa, 1222, 271 N. W. 204, 110 A. L. R. 1415, was a workmen's compensation case. The Elk River Coal & Lumber Company was the employer, Harry K. Briggs, killed in an accident in Iowa, while on duty, was the employee, and Cora M. Briggs, the widow, was the claimant. The employer was a West Virginia corporation, home office at Charleston, West Virginia, and a branch office at Columbus, Ohio. The employer had no office in Iowa; was not authorized to do business in Iowa, but Briggs, representing the employer, commenced taking orders in Iowa for coal in 1928, and so continued until December 8, 1931, when the accident occurred. Briggs' territory was the whole State of Iowa; he had some 500 customers or coal dealers throughout the state to whom he sold coal, collected bills, and adjusted difficulties. During all the time employed, he was a resident citizen and voter of Des Moines, Iowa.

September 15, 1933, the widow filed, with the Iowa industrial commissioner, claim for compensation. The Iowa statute, Sec. 1459, Code of 1935, provided: "Any notice to be given by the commissioner or court provided for in this chapter shall be in writing, but service thereof shall be sufficient if registered and deposited in the mail, addressed to the last known address of the parties . . ." Service, under Sec. 1459, was attempted by sending, by registered mail, notice of hearing to the employer at Charleston, West Virginia, and to Columbus, Ohio. Service of notice was also made upon the Iowa Secretary of State under the provisions of an Iowa statute (Sec. 8421, Code of 1935) relating to service in *civil suits* on foreign corpora-

tions, and the Secretary of State forwarded the notice served on him to the employer in West Virginia. The employer challenged the sufficiency of the service, but was overruled by the commissioner. The question reached the Supreme Court of Iowa and it was held that the service was not sufficient to give jurisdiction over the employer.

The Iowa Supreme Court, relying principally on Pennoyer v. Neff, 95 U. S. 714, 24 L. Ed. 565 said (271 N. W. 1. c. 207): "No sovereignty can extend its process beyond its own territorial limits to subject either persons or property to its judicial decisions. Every exercise of authority of this sort beyond this limit is a mere nullity and incapable of binding such person or property in any other tribunals. . . . 'No state has authority to invade the jurisdiction of another, and by service of process compel parties there resident or being to submit their controversies to the determination of its courts.' . . . 'Due process of law would require appearance or personal service before the defendant could be personally bound by any judgment rendered.' . . . 'Since the adoption of the Fourteenth Amendment to the Federal Constitution, the validity of such judgments may be directly questioned and their enforcement in the state resisted, on the ground that proceedings in a court of justice to determine the personal rights and obligations of parties over whom that court has no jurisdiction do not constitute due process of law.''

Plaintiff, in the present case, says that Sec. 156 (i) of the Illinois statute "provides exactly that which was lacking" in the Iowa statute. The reference is to the proviso in Sec. 156 (i), but the proviso does not *require*, nor does any other section of the Illinois statute *require* that a nonresident who becomes an employer under the Illinois Workmen's Compensation Act thereby make the commission his service agent, and in addition to this omission, Sec. 156 (i) does not *require* the claimant or the commission, when service is on the commission as in the present case, to take such steps as will make it reasonably probable that notice of such service will be communicated to the nonresident employer. [See Pizzutti v. Wuchter. 103 N. J. L. 130; Wuchter v. Pizzutti, 276 U. S. 13, 48 Sup. Ct. 259, 72 L. Ed. 446, infra.]

Plaintiff cites American Railway Express Co. v. F. S. Royster Guano Co., 273 U. S. 274, 47 Sup. Ct. 355, 71 L. Ed. 642, and Hess v. Pawloski, 274 U. S. 352, 47 Sup. Ct. 632, 71 L. Ed. 1091; Pawloski v. Hess, 250 Mass. 22, 144 N. E. 760. The American Railway Express Company case originated in Virginia. [See American Railway Express Co. v. F. S. Royster Guano Co., 141 Va. 602, 126 S. E. 678.] While doing business as a foreign corporation in Virginia, the Southern Express Company, under the law of Virginia, appointed one Hockaday as its Virginia agent upon whom process against it might be served in Virginia. September 27, 1917, while the Southern was

doing busness in Virginia, the guano company made a shipment by express from Richmond to Norfolk, and the shipment was lost. Later the Southern was taken over by the American Railway Express Company, and the Southern ceased to operate in Virginia, and its agent, Hockaday, left the state. After the Southern ceased to operate in the state, and after Hockaday had left the state, the guano company brought suit against the Southern Express Company in the circuit court in Virginia to recover for the lost shipment.

The Virginia law provided that in the event the appointed service agent of a foreign corporation was not available, service could be had upon the chairman of the state corporation commission. The guano company contended that valid service was had upon the Southern by serving the chairman of the state corporation commission. The Southern appeared specially in the circuit court and moved to quash the service "because it had ceased to do business in the state at the time of the issuance of the writ, nor did it have any statutory attorney therein, the former one having removed therefrom for more than a year." The motion was overruled; the Southern made no further appearance and judgment went against it.

In July, 1922, the guano company brought suit, in Virginia, against the American Railway Express Company on its judgment against the Southern. The American Railway Express Company contended, as did the Southern, that the judgment against the Southern was void because there was no valid service. Ruling the question the Virginia Court of Appeals said (126 S. E. 1. c. 680):

"It need scarcely be added that, if the judgment sued on be a foreign judgment, or one rendered in a sister state, the question of jurisdiction is always open to inquiry. [Black, Judgments, secs. 818, 835, 894-915.] The cases cited and discussed before the court are of this latter character, and are therefore not authority upon the question of jurisdiction before this court. The circuit court of the city of Norfolk, a court of general jurisdiction, having jurisdiction of the subject matter and parties, upon the service of process adjudged by it to be valid and not void upon its face, is conclusive in Virginia upon other courts, and not open to collateral attack." The judgment was affirmed by the Supreme Court of the United States, but it will be noted that a *foreign* judgment was not involved as in the present case.

The facts in Hess v. Pawloski, supra, are as follows: Pawloski was a resident of Massachusetts and Hess was a resident of Pennsylvania. Pawloski was injured in Massachusetts by an automobile driven by Hess, and filed suit against Hess in Massachusetts. A Massachusetts statute provided that the operation of a motor vehicle by a nonresident on a Massachusetts public highway was "equivalent to an appointment by such nonresident of the registrar (of motor vehicles) or his successor in office, to be his true and lawful attorney upon whom

may be served all lawful processes in any action or proceeding against him, growing out of any accident or collision in which said nonresident may be involved while operating a motor vehicle on such a way, and said . . . operation shall be a signification of his agreement that any such process against him which is so served shall be of the same legal force and validity as if served on him personally.'' The statute had this proviso: ''Provided, that notice of such service and a copy of the process are forthwith sent by registered mail by the plaintiff to the defendant, and the defendant's return receipt and the plaintiff's affidavit of compliance herewith are appended to the writ and entered with the declaration.'' Process against Hess was served in compliance with such statute. The Supreme Court of Massachusetts held the service valid, and such ruling was affirmed by the Supreme Court of the United States.

It will be observed that the proviso in the Massachusetts statute made it reasonably probable that actual notice would be communicated to the nonresident defendant.

In Wuchter v. Pizzutti, 276 U. S. 13, 48 Sup. Ct. 259, 72 L. Ed. 446; Pizzutti v. Wuchter, 103 N. J. L. 130, referred to, supra, the facts were these: Pizzutti, a citizen of Pennsylvania, while driving his automobile in New Jersey, injured Wuchter, a citizen of New Jersey, and Wuchter filed suit against Pizzutti in New Jersey to recover for his damages. A New Jersey statute provided as follows: ''From and after the passage of this act any chauffeur, operator or owner of any motor vehicle, not licensed under the laws of the State of New Jersey, providing for the registration and licensing of motor vehicles, who shall accept the privilege extended to nonresident chauffeurs, operators and owners by law of driving such a motor vehicle or of having the same driven or operated in the State of New Jersey, without a New Jersey registration or license, shall, by such acceptance and the operation of such automobile within the State of New Jersey, make and constitute the Secretary of State of the State of New Jersey, his, her or their agent for the acceptance of process in any civil suit or proceeding by any resident of the State of New Jersey against such chauffeur, operator or the owner of such motor vehicle, arising out of or by reason of any accident or collision occurring within the State in which a motor vehicle operated by such chauffeur, or operator, or such motor vehicle is involved.''

Service in the Wuchter case was had on the Secretary of State. Also, notice was personally served on the defendant at his residence in Allentown, Pennsylvania. Defendant did not appear at the trial, and the plaintiff got judgment. From this judgment defendant appealed to the New Jersey Court of Errors and Appeals. That court affirmed the judgment, and the cause reached the Supreme Court of the United States. It will be noted that the New Jersey statute did not require a plaintiff or the Secretary of State to take such steps

as would make it reasonably probable that notice of service be communicated to the nonresident defendant. It was held by the Supreme Court of the United States that the service was not sufficient to support a personal judgment. The court said (276 U. S. l. c. 19): "Where the service of summons is limited (by the statute) to a service on the Secretary of State or some officer of the state, without more, it will be entirely possible for a person injured to sue any nonresident he chooses, and through service upon the state official obtain a default judgment against a nonresident . . ." The court further said (276 U. S. l. c. 24): "But it is said that the defendant here had actual notice by service out of New Jersey in Pennsylvania. He did not, however, appear in the cause and such notice was not required by the statute. Not having been directed by the statute it cannot, therefore, supply constitutional validity to the statute or to service under it." [See also Young v. Masci, 289 U. S. 253, 53 Sup. Ct. 599, 77 L. Ed. 1158.]

In Doherty & Company v. Goodman, 294 U. S. 623, 55 Sup. Ct. 553, 79 L. Ed. 1097, it is said (294 U. S. l. c. 628): "Under these opinions (in the Hess, Wuchter, and Young cases, supra), it is established doctrine that a state may rightly direct that nonresidents who operate automobiles on her highways shall be deemed to have appointed the Secretary of State as agent to accept service of process, provided there is some 'provision making it reasonably probable that notice of the service on the secretary will be communicated to the nonresident defendant who is sued.' "

No case cited supports plaintiff's contention that the service here involved is valid, and we do not think there is such case in the books. The judgment should be reversed, and it is so ordered. *Hyde* and *Dalton, CC.,* concur.

PER CURIAM:—The foregoing opinion by BRADLEY, C., is adopted as the opinion of the court. All the judges concur.