Harold HAYMAN (Plaintiff) Appellant,

v.

SOUTHERN PACIFIC COMPANY, a Corporation (Defendant) Respondent.

No. 44266.

Supreme Court of Missouri.

Division No. 1.

April 11, 1955.

Motion for Rehearing or to Transfer to Court en Banc Denied May 9, 1955.

Ralph L. Markus, St. Louis, Charles E. Gray, St. Louis, for appellant.

George E. Lee, Doris J. Banta, St. Louis, Carter, Bull & Baer, St. Louis, of counsel, for respondent.

HYDE, Judge.

Action for $137,500 damages for personal injuries under the Federal Employers' Liability Act, 45 U.S.C.A. §§ 51–60. Verdict and judgment were for plaintiff for $72,-847.96. However, the Court sustained defendant's motion to set aside the verdict and judgment and entered judgment for defendant dismissing the action on the ground that defendant was not subject to service of process in this state. In the alternative the Court ordered judgment entered for defendant on the ground that plaintiff was not entitled to recover because of releases given by him. In the alternative also, in case its orders entering judgment for defendant were reversed, the Court sustained defendant's new trial on the grounds that the verdict was against the weight of the evidence; that there was error in two instructions; and that the verdict was so grossly excessive as to show bias and prejudice. Plaintiff has appealed.

Our conclusion is that the Court's ruling on the first alternative was correct and that defendant is not subject to suit in this state in this action. Plaintiff relies mainly on International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95. However, the situation in that case was very different from the one presented here.

The material facts on this issue shown by the evidence on defendant's motion to quash were as hereinafter stated. Plaintiff, a resident of this state, was injured in California in 1949 while riding on the tender of one of defendant's trains, and serving as a brakeman, running between Tracy and Fresno. Defendant, a Delaware corporation, is not licensed to do business in Missouri, does not own or operate any railroad lines, railroad equipment, warehouses or any of the usual facilities of railroads in this state, and does not own any real estate in this state. Its closest lines were in Louisiana, Texas and Utah. Pullman cars from defendant's trains were brought to St. Louis by other railroads; and its freight cars were moved into this state by other railroad companies under the terms of standard bill of lading contract terms prescribed by the Interstate Commerce Commission. Defendant had an office in St. Louis (which had been there about 15 years) in charge of a General Agent for the territory of Illinois, Iowa and Missouri. This office was listed in the telephone directory under defendant's name. There were eleven people in the office. (Defendant also had a similar office in Kansas City with nine employees, the activities of which are substantially the same.) Defendant owned the office equipment used with an assessed valuation for taxation of $270. The office space was leased for five years. The work of the St.

Louis office was the solicitation of freight and passenger business over defendant's lines, "quoting rates, tracing shipments, advising industry the most expeditious manner to move their shipments." The office did not issue bills of lading; this was done by the local originating carrier where the shipment started. Collection of freight accounts also was handled by the initial lines although defendant's office would occasionally handle one as an "accommodation to a customer who cannot accomplish it otherwise." Claims for loss or damage were not handled by the St. Louis office. For passengers, the office made reservations and sold tickets for travel solely on defendant's lines; and also arranged for and delivered tickets for travel on other railroads, which included travel on defendant's lines. These tickets were made out in the offices of the railroads with which the travel started. (For travel exclusively on its own lines the annual average was about $6,000 and for travel in connection with other lines about $38,000.) Freight shipments credited to the St. Louis Agency from the three states were in excess of 58,000 car loads in 1950 and in 1951. (1948–1949 about 48,000 cars.) All bills were sent to San Francisco and paid by vouchers drawn there. No checks were written in the St. Louis office and no contracts were made there. Money received in the St. Louis office was deposited in defendant's account in the First National Bank of St. Louis but the General Agent in charge of that office had no authority to draw on it. See also statement of facts in Doyle v. Southern Pacific Co., D.C., 87 F. Supp. 974. Service of summons in this case was under Sec. 506.150(3) (statutory references are to RSMo and V.A.M.S.) applying to domestic or foreign corporations.

■ Since this action is under the Federal Act, plaintiff considers that the right to sue defendant here is a Federal right, citing 45 U.S.C.A. § 56. Plaintiff emphasizes the part of the second sentence of Sec. 56 giving the right to sue in the district "in which the defendant shall be doing business at the time of commencing such action." How-ever, this sentence refers to suits in the United States District Courts and is not applicable here. The next sentence of Sec. 56 makes the jurisdiction of the Federal Courts concurrent with that of State Courts in actions under the Act; but while such actions in State Courts are authorized, the "Act * * * does not purport to require State Courts to entertain suits arising under it". Douglas v. New York, N. H. & H. R. Co., 279 U.S. 377, 49 S.Ct. 355, 356, 73 L.Ed. 747; State of Missouri ex rel. Southern Ry. Co. v. Mayfield, 340 U.S. 1, 71 S. Ct. 1, 95 L.Ed. 3; Doyle v. Southern Pacific Co., supra. Furthermore, as noted by the Court in the Mayfield case, in any event the state must acquire jurisdiction over the defendant. We cannot hold that such jurisdiction was acquired in this case. The situation here is substantially the same as in Green v. Chicago, B. & Q. R. Co., 205 U.S. 530, 27 S.Ct. 595, 596, 51 L.Ed. 916, in which the Court said "The business shown in this case was, in substance, nothing more than that of solicitation"; and ruled "that this is not enough to bring the defendant within the district so that process can be served upon it." This case has never been overruled but instead was specifically approved in International Harvester Co. of America v. Commonwealth of Kentucky, 234 U.S. 579, 34 S.Ct. 944, 58 L.Ed. 1479, and cited (certainly without disapproval) in International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95, the case upon which plaintiff so strongly relies. We followed the Green case in State ex rel. Ferrocarriles Nacionales De Mexico v. Rutledge, 331 Mo. 1015, 56 S.W.2d 28, 85 A.L. R. 1378 and in State ex rel. Nashville, C. & St. L. Ry. Co. v. Hall, 337 Mo. 1229, 88 S.W. 2d 342. For recent cases in other states following it see James v. Nashville, C. & St. L. Ry. Co., 310 Ky. 616, 221 S.W.2d 449; Law v. Atlantic Coast Line R. Co., 367 Pa. 170, 79 A.2d 252; see also Zuber v. Pennsylvania R. Co., D.C., 82 F.Supp. 670; Doyle v. Southern Pacific Co., D.C., 87 F. Supp. 974; Fiorella v. Baltimore & Ohio R. Co., D.C., 89 F.Supp. 850; Goldstein v. Chicago, R. I. & P. R. Co., D.C., 93 F.Supp. 671.

The International Shoe case was a case of solicitation plus additional activities, 340 U.S., loc. cit. 314, 66 S.Ct., loc. cit. 157, connected with its business, including shipping into the state large quantities of goods manufactured by it as in the International Harvester case, as in Vilter Mfg. Co. v. Rolaff, 8 Cir., 110 F.2d 491, cited by plaintiff, in which there was also installation work done in the state, and as in Frene v. Louisville Cement Co., 77 U.S.App.D.C. 129, 134 F.2d 511, 146 A.L.R. 926, in which there was engineering work following sales. Furthermore, the International Shoe case was a suit for the collection of a tax on the privilege of employing labor in the state, which the court said has always been deemed an appropriate subject of taxation, 340 U.S., loc. cit. 321, 66 S.Ct., loc. cit. 160, and which was specifically authorized for the activities involved by an Act of Congress as to persons engaged in interstate commerce 340 U.S., loc. cit. 315, 66 S.Ct., loc. cit. 157. The Court said: "The exercise of that privilege may give rise to obligations; and, so far as those obligations arise out of or are connected with the activities within the state, a procedure which requires the corporation to respond to a suit brought to enforce them can, in most instances, hardly be said to be undue." 340 U.S., loc. cit. 319, 66 S.Ct., loc. cit. 160. The Court then pointed out: "The obligation which is here sued upon arose out of those very activities." Certainly it cannot be said, in this case, that plaintiff's injuries arose out of any activities defendant carried on in the State of Missouri. Instead they arose out of the operation of its freight train over its tracks in the State of California, an activity which defendant did not carry on in the State of Missouri or anywhere near it. We think the ruling in the Green case is still the law of the United States Supreme Court in this kind of a case. Our decisions following it are certainly the law of this state and are applicable to the facts of this case.

■ Plaintiff also relies on Wooster v. Trimont Mfg. Co., 356 Mo. 682, 203 S.W.2d 411, 414. However, the obligation in that case (to pay commission on the business done), as in the International Shoe case, "arose out of those very activities" carried on in Missouri. Furthermore, it was also "a solicitation plus case", with large quantities of merchandise being shipped into this state and other services being performed here in connection therewith. The test of a corporation's " 'presence' in the state" as determined by the extent of its agent's activities, is, of course, a fiction; and as pointed out in the International Shoe case, merely symbolizes the activities of corporate agents which courts deem sufficient to satisfy the demands of due process. Therefore, it seems to us that the most reasonable and satisfactory rule is to hold that a state has jurisdiction of any action against a foreign corporation which seeks to enforce an obligation or liability arising out of acts done in the state by its agents. (See Jurisdiction Over Foreign Corporations—McBaine, 34 Cal.Law Rev. 331, 334.) This rule would reasonably limit the applicability of the Green case. Both the International Shoe case and Wooster v. Trimont Mfg. Co., supra, would come within this rule. As hereinabove shown, this case would not. This above stated rule is the real basis of the laws authorizing suits in a state for acts of nonresident motorists causing injury or damage therein. See Sec. 506.210; Harris v. Bates, Mo., 270 S.W.2d 763, 767, and authorities cited; Jurisdiction Over Nonresident Motorists—Scott, 39 Harvard Law Review 563. We hold this is the proper rule for the determination of this case.

■ Plaintiff also cites Lone Star Package Co. v. Baltimore & Ohio R. Co., 5 Cir., 212 F.2d 147; Kilpatrick v. Texas & P. R. Co., 2 Cir., 166 F.2d 788; Lasky v. Norfolk & W. R. Co., 6 Cir., 157 F.2d 674; Barnett v. Texas & P. R. Co., 2 Cir., 145 F.2d 800; Western Outdoor Advertising Co. of Nebraska v. Berbiglia, Inc., Mo.App., 263 S.W.2d 205. In the Western Outdoor Adv. Company case, the question was the right of a foreign corporation, doing business in this state in violation of its laws, to maintain a suit. The cited Federal cases all involve suits in Federal courts under Federal venue statutes. The Lone Star Package case, involved a third party complaint against an originating carrier on a

shipment into the State of Texas. In the Lasky case, the railroad entered the Southern District of Ohio and it was held that the Federal Rules for service authorized suit in the Northern District of that state. The Barnett and Kilpatrick cases recognized that the Green case had not been overruled but found other activities to authorize jurisdiction. However, the Kilpatrick case was transferred to Texas for trial under the doctrine of forum non conveniens, as authorized by the United States Code. See 28 U.S.C.A. § 1404(a); Kilpatrick v. Texas & P. R. Co., 337 U.S. 75, 69 S.Ct. 953, 93 L.Ed. 1223; Ex parte Collett, 337 U.S. 55, 69 S.Ct. 944, 959, 93 L.Ed. 1207. While we do not apply the doctrine of forum non conveniens in suits against railroad companies actually licensed and operating in this state, State ex rel. Southern Ry. Co. v. Mayfield, 362 Mo. 101, 240 S.W.2d 106, the situation is different in the case of a suit for injuries sustained outside this state in the operation of a railroad by a company which has no lines in this state. See Davis v. Farmers' Co-operative Equity Co., 262 U.S. 312, 43 S.Ct. 556, 67 L.Ed. 996; Michigan Central R. Co. v. Mix, 278 U.S. 492, 49 S.Ct. 207, 73 L.Ed. 470; Denver & R. G. W. R. Co. v. Terte, 284 U.S. 284, 52 S.Ct. 152, 76 L.Ed. 295; Zuber v. Pennsylvania R. Co., D.C., 82 F.Supp. 670; Hershel Radio Co. v. Pennsylvania R. Co., 334 Mich. 148, 54 N. W.2d 286. These cases, following the Davis case, hold that the infliction of the burden on interstate commerce from the trial of such an outside cause of action "deprives the courts of jurisdiction over cases like this." Denver & R. G. W. R. Co. v. Terte, 284 U.S., loc. cit. 287, 52 S.Ct., loc. cit. 153. In the Davis case, the Court held invalid a Minnesota statute compelling "every foreign interstate carrier to submit to suit there as a condition of maintaining a soliciting agent within the state." 262 U.S., loc. cit. 315, 43 S.Ct., loc. cit. 557. The Court noted that "Jurisdiction is not limited to suits arising out of business transacted within Minnesota"; and said: "This condition imposes upon interstate commerce a serious and unreasonable burden, which renders the statute obnoxious to the commerce clause." The cause of action in the Davis case arose out of the operation of a railroad in Kansas by a company which did not own or operate any railroad in Minnesota. Thus the Davis case and those following it are likewise applicable to the situation herein and establish an additional ground for the result herein reached.

█ Plaintiff makes the further contention that jurisdiction can be upheld under Sec. 508.040 authorizing suits, against "a railroad company owning, controlling or operating a railroad running into or through two or more counties in this state," to be brought "in either of such counties * * *." Plaintiff says defendant controls the St. Louis Southwestern Railway Company by ownership of a majority of its stock, as stated in St. Louis Southwestern Railway Co. v. Meyer, Mo., 272 S.W.2d 249, of which plaintiff asks us to take judicial notice. However, even if we took judicial notice of the stock ownership stated in that case, that would not make this venue statute applicable to this case. To bring a railroad corporation under this statute, it must own, control or operate a railroad (not a railroad company) in this state; that is it must own, control or operate the actual railroad tracks, lines and facilities that constitute a railroad. The statute says "owning, controlling or operating a railroad"; it says "railroad" and it means "railroad." We have another statute, Sec. 388.300, which makes both owners leasing railroads and the lessees thereof liable for injuries or damages caused by its operation. See Chicago & A. R. Co. v. McWhirt, 243 U.S. 422, 37 S.Ct. 392, 61 L.Ed. 826, affirming McWhirt v. Chicago & A. R. Co., Mo., 187 S.W. 830; Francis v. Terminal R. Ass'n, 354 Mo. 1232, 193 S. W.2d 909. No doubt, when Sec. 508.040 was amended in 1903, Laws 1903, p. 115, to add the words upon which plaintiff relies, one purpose was to make it applicable to such situations. The St. Louis Southwestern Railway Company undoubtedly owns, controls and operates a railroad in this state but it is specifically shown by the evidence herein that defendant does not. Plaintiff apparently means that we should disregard corporate entities but has made no case for that. See May Dept. Stores Co. v. Union

Electric Light & Power Co., 341 Mo. 299, 107 S.W.2d 41, 53–56; National Enameling & Stamping Co. v. Granite City & M. B. L. R. Co., Mo., 199 S.W. 238. We hold the Court properly dismissed plaintiff's action. Of course, this dismissal is without prejudice to plaintiff's right to proceed in the proper forum. See Sec. 510.150.

The judgment is affirmed.

All concur.