Edwin W. PONDER, Appellant,

v.

AAMCO AUTOMATIC TRANSMISSION, INC., a corporation, Respondent.

No. KCD 27100.

Missouri Court of Appeals, Kansas City District.

May 3, 1976.

Von Erdmannsdorff, Kuhlmann & Zimmerman, Kansas City, for appellant.

John J. Alder, Richard D. Rixner, Donald L. Zemites, Shawnee Mission, Kan., Milton Skeens, Kansas City, for respondent.

Before SHANGLER, P. J., and SWOFFORD and SOMERVILLE, JJ.

SHANGLER, Presiding Judge.

The plaintiff brought a petition in two counts for actual and punitive damages against *Aamco Transmissions, Inc.*, and John Hale and Roy Hale, a partnership. The defendants Hale operated an automotive service center under a franchise agreement with *Aamco Automatic Transmissions, Inc.*, a Pennsylvania corporation. The plaintiff had service of process on the defendant partners and also on John Hale, described on the return of the sheriff as *Manager of Aamco Transmission Corporation.* The partnership answered the petition but Aamco made no response.

The plaintiff then filed an amended petition which reiterated the causes of action against the parties but redesignated the corporate defendant as *Aamco Automatic Transmissions, Inc.* Service of process on the corporate defendant was made on Roy

Hale as *Manager of Aamco Automatic Transmissions, Inc.* Once again, Aamco failed to answer the petition. Thereafter, the plaintiff voluntarily dismissed the defendants Hale.

Aamco did not appear at the trial and a judgment by default was entered against the corporation for $700 actual and $50,000 punitive damages on Count I and $355.35 actual and $15,000 punitive damages on Count II of the petition.[1] A general execution issued. Aamco moved for quashal of the pretended service of process and to stay execution of the judgments.

The plaintiff contended to the court that the judgments had issued upon the service of process prescribed for foreign corporations by § 506.150, RSMO 1969, and therefore were valid exercises of jurisdiction. That statute provides:

The summons and petition shall be served together  .  .  .

(3) Upon a domestic or foreign corporation  .  .  .  by delivering a copy of the summons and of the petition to an officer, partner, a managing or general agent, or by leaving the copies at any business office of the defendant with the person having charge thereof, or to any other agent authorized by appointment or required by law to receive service of process  .  .  .

The corporate defendant contended that Aamco neither conducted business at the automotive service premises of the defendants Hale nor constituted them as agent to accept service on behalf of the corporation; thus Aamco was neither amenable to service nor properly served and was not subject to the jurisdiction and judgment of the court.

The court took evidence on the motions and set aside the default judgments for want of proper service of summons and jurisdiction over the defendant corporation. The plaintiff has appealed.

A summons is a process, a means by which a defendant is subjected to the jurisdiction and judgment of the court which has issued the writ; it is also notice to a party of the proceeding against him and that he has opportunity to appear and defend his right of life, liberty and property. *State ex rel. Ballew v. Hawkins*, 361 S.W.2d 852, 857[7–10] (Mo.App.1962); 62 Am.Jur.2d, Process, § 2. The requirements for process and the manner of service are wholly as constituted by statute, and where not met, the court is without power to adjudicate. *State ex rel. Minihan v. Aronson*, 350 Mo. 309, 165 S.W.2d 404, 407[3, 4] (1942).

The plaintiff claims the authority of § 506.150(3) to validate the judgments against Aamco. A foreign corporation is amenable to service—and a judgment in personam—by the terms of that statute only if it is doing business in this state. *Collar v. Peninsular Gas Company*, 295 S.W.2d 88, 91[4] (Mo.1956). The statute also requires that the delivery of process be upon one of the class authorized to receive service for the corporation. These observances are not only jurisdictional to a valid judgment as a matter of local law, but the requirement that a foreign corporation "do business" within the forum to be amenable to personal service is one of federal due process according to the jurisprudence reflected by § 506.150(3). *Hall v. Wilder Mfg. Co.*, 316 Mo. 812, 293 S.W. 760, 762[2] (1927). This constitutional requisite is met by evidence that the foreign corporation "entered the state and engaged there in carrying on and transacting, through its agents, the ordinary business in which it is engaged". *State ex rel. Ferrocarriles Nacionales de Mexico v. Rutledge*, 331 Mo. 1015, 56 S.W.2d 28, 38[13] (1932), cert. den. 289 U.S. 746, 53 S.Ct. 689, 77 L.Ed. 1492 (1933).

As presently appears, the evidence shows that there was no agreement of agency between the Hales and Aamco, either for the conduct of business or to receive service

---

1. The causes of action were for negligent and wanton treatment of the automobile the plain-

tiff entrusted to the defendants for transmission repair.

of process on behalf of the corporation.[2] The question thus raised is whether, on the evidence, the foreign corporate franchisor was doing business within Missouri through the activity of the franchisee. Or, put another way, whether the Hales in fact operated the transmission service center as an agency of Aamco rather than as an independent business.

As the comment in 36 Am.Jur.2d, Foreign Corporations, § 363 articulates, it is often difficult to determine whether a local dealer who markets the products of a foreign corporation is in fact an independent business or so far under the control of the foreign company that the dealer becomes merely a conduit for the passage of goods from the foreign manufacturer to the consumer:

[The] difficulty arises chiefly from the fact that under some marketing practices, the local handling of such products is often pursuant to contracts which . . in varying degree, restrict independent action [of the local dealer], regulate future relations of the parties and the manner and terms of disposal of the products, provide for co-operation and assistance on the part of the foreign company, and create a somewhat anomalous relation between such company and the local dealer, partaking both of the character of seller and purchaser and that of principal and agent. *Whether the local dealer's activities pursuant to such a contract will be held to constitute doing business in the state on the part of the foreign corporation ordinarily depends on whether the effect of the terms of the particular contract is deemed to include the creation of a relation of principal and agent in respect to the foreign corporation's business. If it is, the corporation is ordinarily regarded as doing business in the state . . . . . If the effect of the contract is deemed to be no more than the creation of the relation of seller and buyer, how-*ever, a contrary view is taken.* The question depends on the sense of the agreement as a whole. [Emphasis supplied.]

In the consideration of this issue, the New York Court of Appeals has held that where the foreign corporation is a separate entity, unmingled in ownership with the domestic enterprise, a valid inference of agency does not arise, and the foreign corporation has neither "presence" in the forum state nor is "doing business" in the traditional sense as to allow personal service and jurisdiction for a general judgment. *Delagi v. Volkswagenwerk AG of Wolfsburg*, 29 N.Y.2d 426, 328 N.Y.S.2d 653, 655, 278 N.E.2d 895[1] (1972). Finding no inference of agency, the opinion noted the court had never held a foreign corporation to be "doing business" on the basis of control exerted over franchise dealers unless there was at least a parent-subsidiary relationship, and then only when the control over the subsidiary was so complete as to render it in fact merely a department of the parent.

A comparable logic underlies our decision in *Ward v. Cook United, Inc.*, 521 S.W.2d 461 (Mo.App.1975). In that case Cooks Discount Department Store was a Missouri retail outlet and division of the national discount house, Cook United, Inc., an Ohio corporation, not licensed to do business in this state. The plaintiff brought an action for false arrest and imprisonment against Cook United with directions that service of process be made on: *Cook United, Inc. d/b/a Cooks Discount Department Store . . . (SERVE: STORE MANAGER).* A default judgment for actual and punitive damages was entered pursuant to the return of the sheriff which certified service upon *Operation Manager, Sam Wray.* Wray was the manager of the local retail division of the defendant Cook United. The defendant moved to quash the return of service as noncompliant with § 506.150(3) on the premise that Cook United was not

---

2. Aamco was not licensed to do business in Missouri. It is not required for valid service under § 506.150(3), however, that the corporation be licensed to do business in this state, but only that it is doing business here when served. *Ward v. Cook United, Inc.*, 521 S.W.2d 461, 464[1] (Mo.App.1975).

doing business in Missouri through the local Cooks Discount Department Store and that, under the statute, service of process upon the manager of the local retail outlet was not notice to the foreign corporate defendant.

The evidence was, however, that the defendant regularly advertised Cooks Discount Department Store as a division of Cook United, Inc., that the defendant employed and paid the personnel of the retail outlet, and that the daily regular activity of the Missouri store was completely controlled and dominated by the parent Ohio corporation. These circumstances created the local retail operation the agent for the conduct of the business of the defendant corporation which thereby became amenable to service of process and personal judgment under § 506.150(3).

■ The evidence before us is of a different character. The relationship between the Hales and Aamco was created and governed by a Franchise Agreement which by its very terms acknowledged that the Hales would be independent in their business. In pursuance of that course of dealing, the Hales established the family corporation, J. & R. Enterprises, Inc., which was the employer for the automotive service business, conducted the financial transactions, and leased the business premises. Under the Franchise Agreement, and in practice, the Hales purchased equipment and material from Aamco and received title; the Hales [J. & R. Enterprises] hired and paid their own employees without interference from Aamco, kept their own books and paid their own taxes; the Hales [J. & R. Enterprises] set their own prices and arranged for customer financing; Aamco paid nothing for the services of the Hales. Then there was the testimony of Roy Hale which acknowledged that he was never authorized by Aamco as agent either in the business affairs of the franchisor or for service of process on behalf of that corporation.

Aamco was entitled to 7% of the cash receipts of the franchisee under their agreement. Only the Aamco name was allowed [and in fact was exhibited] on the automotive center building premises. Reports were required from the Hales to Aamco on forms provided for that purpose; occasionally the Hales were instructed to adopt certain business procedures and were subject to inspection by an Aamco representative. The advertising in every diversity was prepared and controlled by Aamco but paid for by the Hales at the cost of from $300 to $400 per week. The franchisee was required to establish those guarantees to the public as established by Aamco. The quality standards and specifications for parts sold were set by Aamco. The franchisee agreed to do work on credit and to belong to such national credit services as designated by Aamco. The franchisee agreed to purchase parts exclusively from Aamco except under certain conditions. The hours of operation were subject to the control of Aamco. These and other related conditions were expressed in the agreement of the parties.

The sense of the agreement as a whole, as we find it, recognizes the operation of the Hales as an independent business. The conditions imposed by Aamco do speak a measure of control over the activities of the franchisee, but not so far as to constitute the local outlet a mere conduit for the goods and services of the franchisor. The title to the goods purchased from Aamco under the agreement passed to the Hales; they employed, governed and paid their own personnel, set their own prices, leased their own premises and were, strictly, a business enterprise separate from Aamco. The relation between them was that of seller and buyer, not principal and agent. Accordingly, Aamco was not doing business in this state through the activity of the franchisee and so was not amenable to service under the provisions of § 506.150(3).

■ Nor is it of any consequence that Aamco may have had actual notice of the suit when the attorney for the Hales notified the Pennsylvania counsel of the corporate defendant that Hale had been served with process as manager of Aamco. Actual

notice given in any manner other than as prescribed by the service statute is not sufficient. Due process of law as applied to proceedings which result in judgment means a notice directed by the statute itself and not one given in discretion or favor. *Harris v. Bates*, 364 Mo. 1023, 270 S.W.2d 763, 769[13] (1954).

■ The plaintiff chose to invoke the power of the Missouri courts to adjudicate his claim against Aamco by the procedures of § 506.150(3). That enactment expresses the constitutional principle of due process that a state has no power to assert an in personam jurisdiction over a foreign corporation which is not doing business within the forum at the time of service. The judgments accorded the plaintiff fail for want of jurisdiction under the statute.

The more recent jurisprudence has noted that the increased flow of commerce between the states has engendered need for an increased jurisdiction over nonresidents, and that the advances in communications and transportation have lessened the burden of defense of a suit in a foreign tribunal. *Hanson v. Denckla*, 357 U.S. 235, 251[16], 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). The traditional doing business quantum has yielded to the nature of the corporate activity as the test for jurisdiction. The new test lays down the principle that the due process clause requires only that, in order to subject a nonresident to a judgment in personam, "certain minimum contacts" within the forum territory must be shown so that "the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice'". *International Shoe Co. v. Washington*, 326 U.S. 310, 316[3], 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). And where the activity of the nonresident within the state is of exceptional concern to the forum, the exercise of the power of the courts to adjudicate may be permitted on the basis of a single transaction within the jurisdiction. *McGee v. International Life Ins. Co.*, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957).

The Missouri Legislature responded to these developments by the enactment in 1967 of §§ 506.500 through 506.520, RSMo 1969. These statutes submit nonresidents to the jurisdiction of our courts as to any cause of action which arises from [inter alia] any contract made by the nonresident within the state or the transaction of any business within the state. § 506.500; Rule 54.06. This procedure, which extends the jurisdiction of the courts of this state over nonresident defendants to the outer limits permitted by federal due process, was declared constitutional in *State ex rel. Deere & Company v. Pinnell*, 454 S.W.2d 889, 892 (Mo. banc 1970).

■ Although we have concluded that Aamco was not doing business in Missouri according to the traditional concepts of due process expressed by § 506.150(3) and therefore not amenable to the jurisdiction of the forum, the activity of Aamco under the franchise agreement was the transaction of business in this state and afforded those minimum contacts for jurisdiction and judgment under § 506.500. The plaintiff made no attempt to comply with the provisions for the commencement of an action under that statute [§ 506.510; Rule 54.06] by personal service of process outside the state, thus the judgments entered upon the counts of that petition were without the notice of statute and without force of law.

We notice and overrule the Aamco motion to dismiss the appeal for want of compliance by the plaintiff with Rules 84.04(d) and (h).

The judgment of quashal of service and stay of execution of the judgments on Counts I and II is affirmed.

All concur.