STATE of Missouri ex rel. NORTHWEST ARKANSAS PRODUCE COMPANY, INC., a corporation, and James Neil Harshman, Relators,

v.

The Honorable Carl R. GAERTNER, Judge of the Circuit Court of the City of St. Louis, State of Missouri, Respondent.

No. 39985.

Missouri Court of Appeals, St. Louis District, Division Two.

Sept. 26, 1978.

Motion for Rehearing and/or Transfer to Supreme Court Denied Nov. 17, 1978.

Application to Transfer Denied Dec. 18, 1978.

Sam P. Rynearson, Gerre S. Langton, Evans & Dixon, St. Louis, for relators.

James E. Hullverson, Stephen H. Ringkamp, Hullverson, Hullverson & Frank, Inc., St. Louis, for respondent.

STEPHAN, Judge.

This is an original proceeding instituted by the filing of a petition for a writ of prohibition praying that this court command the Honorable Carl R. Gaertner, Judge of the Circuit Court of the City of St. Louis, to dismiss and to refrain from proceeding further in a certain action pending before him. Because of the nature of the relief sought, an alternative writ of mandamus was issued. Nevertheless, the matter was briefed and argued as a proceeding in prohibition; and, as a result of our study of the briefs and deliberations, we believe such procedure was correct. We now take the matter as one in prohibition and issue a permanent writ, as hereinafter provided.

The underlying cause of action is one for damages brought by Jo Anna Brown (plaintiff) against relators Northwest Arkansas Produce Company and James Harshman. Plaintiff's petition alleged that she was injured in Madison County, Missouri, through the negligent operation of Northwest's truck by its employee, Harshman. None of the parties is a Missouri resident: plaintiff is an Arkansas resident; Northwest is an Arkansas corporation [1]; Harshman is a resident of Michigan. Service of process was accomplished on Northwest in Arkansas by registered mail, the papers originally having been served on the Secretary of State of Missouri as Northwest's agent. Harshman was served by a pluries summons in a similar manner. Relators contend that such service was had pursuant to Missouri's statutes relating specifically to actions against nonresident motorists (the Nonresident Motorist Act), §§ 506.200 et seq., RSMo 1969. Respondent contends that, although service was consistent with the provisions of that statute, it was equally consistent with Supreme Court Rules 54.08 and 54.15.

Relators argue that venue of the action properly lies in Madison County, where the accident occurred. In its present form, the venue provision of the Nonresident Motorist Act, § 506.290, provides that:

> "Any suit under the provisions of sections 506.200 to 506.320 shall be filed in the county in which the cause of action accrues or in the county where the plaintiff resides, and if there be other defendants in such action who are residents of the state of Missouri, then such action shall be brought in any county in which any one of said defendants reside, or in the county within which the plaintiff resides and the defendant may be found."

1. The parties agree that Northwest does not maintain an office in the City of St. Louis. Indeed, no contention is made that Northwest maintains an office anywhere in the state of Missouri, and an affidavit to this effect attached to the petition is not denied in the return.

Thus, given the facts of the underlying case, if the plaintiff were restricted to asserting her cause of action under the provisions of §§ 506.200 et seq. venue would properly lie only where her cause of action accrued, i. e. Madison County. Respondent contends, however, that this section is not the exclusive venue provision in this situation because of § 506.280 which states that:

"The foregoing provisions relative to service of process in suits against nonresidents shall not be deemed to prevent actual personal service in this state upon a nonresident in the time, manner, form, or under the conditions provided for service on residents, and nothing contained in sections 506.200 to 506.320 shall be construed as in any manner limiting, affecting or repealing any cause of action, right, or method of procedure now provided by law, but the provisions of said sections are cumulative and in addition to any such existing right, remedy, cause of action, and method of procedure."

Respondent argues that § 506.280 operates to permit the application of Missouri's general venue provision, § 508.010. In pertinent part, that section provides that:

"Suits instituted by summons shall, except as otherwise provided by law, be brought: . . .
(4) When all the defendants are nonresidents of the state, suit may be brought in any county in this state; . . . "

Both parties in ably written briefs urge upon this court numerous precepts of statutory construction, the object of all of which is to attempt to establish the probable intent of the General Assembly in the case of ambiguity within a statute or among different statutes. Although all of these principles are useful, we think the issue at hand is resolved by an examination of the legislative framework within which this case reposes.

Nonresident motorist statutes began to appear shortly after the automobile itself,[2] survived many constitutional attacks,[3] and came to be founded upon the legal fiction that by using the public roads a nonresident constructively consented to being sued in the foreign state. Missouri adopted a comprehensive act of this nature in 1941, L.1941, p. 435 et seq., which, as amended, appears in §§ 506.200 through 506.320, RSMo 1969. Jurisdiction of the courts of this state over nonresidents is triggered by an "agreement" articulated in § 506.210, which reads as follows:

"The use and operation of a motor vehicle or trailer in this state on the public highways thereof by a person who is a nonresident of this state shall be deemed:

(1) An agreement by him that he, his executor, administrator or other legal representative shall be subject to the jurisdiction of the courts of this state in all civil actions and proceedings brought against him, his executor, administrator or other legal representative by either a resident or a nonresident plaintiff, for damages to person or property, including actions for death, growing or arising out of such use and operation; and

(2) An appointment by such nonresident, his executor, administrator or other legal representative of the secretary of state of Missouri as his lawful attorney and agent upon whom may be served all process in suits pertaining to such actions and proceedings;

(3) An agreement by such nonresident that any process in any suit so served

**2.** In a law note entitled "The Problem of the Transient Nonresident Motorist", 14 St. Louis L.Rev. 62, 65 (Dec. 1928), the following appears:

"Apparently the first statute covering the situation presented at the outset was passed by the Legislature of New Jersey in 1908. It provides in substance that a nonresident motorist, on entering the state, shall register his machine and also shall file an instrument appointing the Secretary of State as his attorney upon whom process may be served in any action growing out of the operation of his motor vehicle within the state. Notice of such service is to be given to the defendant by letter directed to his postoffice address which he has supplied. Penalties are prescribed for violations of the statute."

**3.** See *Kane v. New Jersey*, 242 U.S. 160, 37 S.Ct. 30, 61 L.Ed. 222 (1916); *Hess v. Pawloski*, 274 U.S. 352, 47 S.Ct. 632, 71 L.Ed. 1091 (1927).

shall be of the same legal force and validity as if personally served in this state."[4]

As enacted in 1941, the venue provision of the Act read as follows:

"Any suit under the provisions of this act shall be filed in the County in which the cause of action accrues and if there be other defendants in such action who are residents of the State of Missouri, then such action shall be brought in any county in which any one of said defendants reside, or in the County within which the plaintiff resides and the defendant may be found."

During the course of the Sixty-fifth General Assembly in 1949 a measure, Senate Bill 217, was introduced which would have altered the wording of the foregoing section so as to specifically provide "Any suit under the provisions of this act shall be filed in any county in this state . . . " During the legislative process, Senate Bill 217 was amended to delete the reference to venue "in any county" so that the section reads substantially as it does now: "Any suit under the provisions of this act shall be filed in the county in which the cause of action accrues or in the county where the plaintiff resides . . . " Such rejection of the concept of venue "in any county" is an unusually clear expression of legislative intent: the General Assembly in effect declared that venue of suits brought under §§ 506.200 through 506.320 shall, in the case of a nonresident plaintiff, be limited to the county where the cause of action accrued or the county of a resident defendant's domicile.[5]

It is argued on behalf of respondent that the service obtained here is equivalent to that contemplated by the general venue statute, § 508.010. In exploring that contention, we look first to whether plaintiff has a cause of action other than that contemplated by §§ 506.200 through 506.320.

As a result of judicial decisions which liberalized earlier views of due process requirements relating to extraterritorial in personam jurisdiction,[6] many states have adopted "single act" long arm statutes which provide that certain conduct of a

4. The references in § 506.210 to "executor, administrator or other legal representative" were inserted in the section by amendment in 1955. Laws 1955 p. 310.

5. Since § 506.280 specifically provides that it does not "prevent actual personal service in this state upon a nonresident in the time, manner, form, or under the conditions provided for service on residents," a nonresident defendant could, under appropriate circumstances, be served wherever he could be found in the state. The venue of an action brought under §§ 506.-200 to 506.320, however, would continue to be governed by § 506.290.

6. In State ex rel. Apco Oil Corporation v. Turpin, 490 S.W.2d 400, 404 (Mo.App.1973), Judge Simeone discussed these developments as succinctly as the subject will permit:

"Extraterritorial jurisdiction over natural persons and foreign corporations has had a long and checkered history from Pennoyer v. Neff, 95 U.S. 714, 24 L.Ed. 565 to International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 and State ex rel. Deere & Co. v. Pinnell, Mo., 454 S.W.2d 889, which upheld the constitutionality of our statute. See Comment, 16 St. Louis U.L.J. 315. Since the days of Pennoyer in the last century, great social, scientific and sociological changes have been made. We are truly a different society. State lines do not have the same significance they once did insofar as service of process is concerned. 'Rigid concepts have yielded to fiction, and fiction has yielded to forthright and realistic considerations of fairness in the determination of what constitutes jurisdiction to determine personal rights.' Deere, supra, at 892, quoting from Nelson v. Miller, 11 Ill.2d 378, 143 N.E.2d 673, 676. In McGee v. International Life Ins. Co., 355 U.S. 220, 222, 78 S.Ct. 199, 201, 2 L.Ed.2d 223, 226, the Supreme Court of the United States stated: 'Looking back over this long history of litigation a trend is clearly discernible toward expanding the permissible scope of state jurisdiction over foreign corporations and other nonresidents.' Today '. . . due process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." ' International Shoe Co., supra, 66 S.Ct. at 158, quoted in Deere, supra, at 893. Today there are only two requirements to acquire jurisdiction over one not served with process within the state: (1) that there be certain minimum contacts with the state, and (2) there is a reasonable method of notification given."

nonresident person or corporation subjects it to jurisdiction of the courts of the state where the conduct occurs or causes damage. Missouri did so in 1967. Senate Bill 130 of the Seventy-fourth Session of the General Assembly was composed of three sections: the first provided, as relevant here, that any person or corporation who individually or through an agent commits a tortious act within this state thereby submits such person or corporation "to the jurisdiction of the courts of this state as to any cause of action arising from" such tortious act, § 506.500; the second section provides the method for extraterritorial service of process, § 506.-510; and the third section authorizes a personal judgment "[w]hen jurisdiction over a person, firm, or corporation who is outside this state is acquired *in accordance with the provisions of sections 506.500 and 506.510* ". (Emphasis added.) The third section also provides for default judgments. § 506.520. Because of the significance of § 506.510 to the instant case, we set it forth verbatim:

"1. Service of process upon any person who is subject to the jurisdiction of the courts of this state, as provided in section 506.500, may be made by personally serving the process upon the defendant outside this state, or upon a corporation by serving the process upon a managing officer or any person or corporation who shall be designated as a registered agent by such corporation in any of the several states, and shall have the same force and effect as though the process had been served within this state.

2. The process, together with a copy of the petition, and necessary fees shall be sent to a court of record or court officer at the place where the defendant may be served with process, and may be personally served upon the defendant by the person authorized to serve process at that place.

3. An affidavit of the person serving the process shall be returned to the office of the clerk or judge from which it issued. The affidavit shall state the time, manner and place of service of the process and of the copy of the petition. The court may consider the affidavit, or any other competent evidence, in determining whether service has been properly made."

Senate Bill 130 contained no provisions relating to venue of actions brought under it. Thus, under the general venue statute, § 508.010, since all defendants in the underlying action are nonresidents, this suit could be properly filed in the Circuit Court of the City of St. Louis.

■■■ As noted at the outset, however, service of process in the underlying case was had upon the defendants by registered mail after service upon the Secretary of State of Missouri. Respondent argues in effect that such service was sufficient to confer in personam jurisdiction under § 506.510. We disagree. *Germanese v. Champlin,* 540 S.W.2d 109, 111[1] (Mo.App. 1976). Jurisdiction was not "acquired in accordance" with the provisions of § 506.510 which calls for personal service on the defendant obtained through a court of record or court officer authorized to serve process where the nonresident defendant is found.[7] Nor is an unidentified post office employee who delivers the registered mailing from the Secretary of State "a person appointed by the court in which the action is pending", as contemplated by Rule 54.14. Further reference to Supreme Court Rules reflects that, although Rule 54.08 specifically authorizes service of extraterritorial process in actions brought under the provisions of §§ 506.200 through 506.320 by either personal service as permitted by Rule 54.14 or by service on the Secretary of State followed by a certified or registered mailing to the nonresident defendant, Rule 54.15, no such authorization is found as to actions brought under § 506.500. The service obtained by plaintiff in the underlying ac-

---

**7.** As pointed out in *Germanese v. Champlin,* supra, footnote 1, the method of service provided by § 506.510 has been expanded by Supreme Court Rules 54.07 and 54.14, "to authorize service out of state in any manner which is proper within the State of Missouri." Similarly, the Supreme Court has promulgated rules which parallel and expand upon § 506.500 (Rule 54.-06) and § 506.240 (Rule 54.15).

tion could support only an action based on the "implied consent" nonresident motorist statutes, §§ 506.200 through 506.320, venue of which is in the county where the cause of action accrued. It could not support an action brought under §§ 506.500 through 506.520. Put another way, in the present posture of this case, the Circuit Court of the City of St. Louis is without jurisdiction to enter a personal judgment against the relators.

As was said in *State ex rel. Craig v. Grimm,* 542 S.W.2d 335, 337[2] (Mo.App. 1976):

> "Proper service of process (in this case, a summons) in the form and manner prescribed by law has ever been a prerequisite to a court's acquiring jurisdiction of the person albeit has jurisdiction of the subject matter of the action . . . and service of a defective or void summons is the equivalent to no service at all." (Citations omitted.)

Similarly, in *Ponder v. Aamco Automatic Transmission, Inc.,* 536 S.W.2d 888 (Mo.App. 1976), the trial court's order quashing service of process and staying execution of default judgments against a foreign corporation was affirmed where there had been defective service. The following quotations from that case are of particular significance here:

> "The requirements for process and the manner of service are wholly as constituted by statute, and where not met, the court is *without power to adjudicate.*" Id. 890

> \* \* \* \* \* \*

> "Actual notice given in any manner other than as prescribed by the service statute is not sufficient. Due process of law as applied to proceedings which result in judgment means a notice directed by the statute itself and not one given in discretion or favor." Id. 892–893

> \* \* \* \* \* \*

> "The plaintiff made no attempt to comply with the provisions for the commencement of an action under that statute [§ 506.510; Rule 54.06] by personal ser-

vice of process outside the state, thus the judgments entered upon the counts of that petition were without the notice of statute and without force of law." Id. 893

From the foregoing, it is clear that, although the respondent has subject matter jurisdiction of the underlying cause, the procedure followed to obtain service on the relators has not properly brought them before the trial court. Respondent has no jurisdiction over the persons of the relators in the case now pending before him. Accordingly, a writ of prohibition will issue and stand as absolute unless and until valid service of process may be obtained as provided in § 506.510 or Rule 54.06. *State ex rel. Bartlett v. McQueen,* 361 Mo. 1029, 238 S.W.2d 393, 396[4] (banc 1951); *State ex rel. Bufford v. Dalton,* 479 S.W.2d 204, 206 (Mo. App.1972).

Unless relators elect to enter their appearance voluntarily or the case is dismissed without prejudice and refiled in Madison County, relators' argument concerning equal protection will in all likelihood be reasserted in the trial court. The argument is essentially two pronged: (a) Nonresident defendants are discriminated against by this state in that a plaintiff injured by the negligent act of a resident defendant may sue only where the defendant resides, where the plaintiff resides and the defendant can be found, or where the cause of action accrued. On the other hand, a nonresident defendant may be sued in any county. (b) Nonresident defendants are denied equal protection if the law is, as we hold it to be, that a plaintiff may elect to sue under the Nonresident Motorist Act, §§ 506.200 et seq., or under the "single act" long arm statutes, §§ 506.500 et seq., which by application of § 508.010 may permit the filing of suit "in any county".

This court has noted that the requirements of venue are bottomed on the concept of convenience to litigants. *State ex rel. Pagliara v. Stussie,* 549 S.W.2d 900, 903 (Mo.App.1977), quoting from 77 Am. Jur.2d, Venue, § 1, p. 832. However, it is obvious that venue cannot always be laid in

a setting which is equally convenient for all: multiple defendants, residents and non-residents must be provided for in ways which, in some circumstances, are necessarily less convenient for some than others. Such variance in treatment does not, however, offend the equal protection requirements of the Constitutions of Missouri and of the United States unless it is arbitrary and fails to treat all who are similarly situated evenhandedly. *State ex rel. Collins v. Donelson,* 557 S.W.2d 707, 711[5] (Mo.App. 1977); *State ex rel. Toedebusch Transfer, Inc. v. Public Service Commission,* 520 S.W.2d 38, 46 (Mo. banc 1975). Nonresident defendants comprise a class based upon rational distinction, and to treat them differently from resident defendants with regard to venue in no way constitutes invidious discrimination rising to constitutional dimensions. "When all persons within the purview of a statute are subjected to like conditions, then they are afforded equal protection of the law." *State v. Day-Brite Lighting, Inc.,* 362 Mo. 299, 240 S.W.2d 886, 893 (Mo. banc 1951). There can be no doubt that all persons against whom a cause of action is asserted under the nonresident motorist statutes are required to be treated in the same fashion, and this is equally true among those who submit to the jurisdiction of the courts of this state by the "commission of a tortious act within this state." Section 506.500; Rule 54.06. Furthermore, we fail to see how the fact that a plaintiff in this situation may choose to secure jurisdiction under two different statutes with different venue provisions can be said to create arbitrary classes among similarly situated defendants any more than does a single venue statute which provides a plaintiff with a choice of forums. Relators' arguments relating to equal protection are without merit.

Permanent writ of prohibition to issue unless and until valid service of process may be obtained.

STEWART, P. J., and REINHARD, J., concur.