**FARMLAND INDUSTRIES, INC., Plaintiff,**

v.

**SEABOARD COASTLINE RAILROAD CO., Defendant.**

**No. 79–0677–CV–W–4.**

United States District Court, W. D. Missouri, W. D.

June 3, 1980.

Neal A. Gerstandt, Stinson, Mag & Fizzell, Kansas City, Mo., for plaintiff.

Jack D. Rowe, Kathryn H. Vratil, Lathrop, Koontz, Righter, Clagett, Parker & Norquist, Kansas City, Mo., for defendant.

ORDER

ELMO B. HUNTER, District Judge.

This matter is before this Court on defendant's motion to quash service of process and to dismiss for lack of *in personam* jurisdiction. An evidentiary hearing on this motion was held on April 11, 1980, in Kansas City, Missouri.

I.

The parties have stipulated that the following facts are agreed upon and require no proof:

1. Plaintiff is a cooperative supply corporation duly organized under the laws of the State of Kansas.

2. Defendant is a corporation organized under the laws of the State of Virginia. Defendant operates as a common carrier and is not qualified to do business as a foreign corporation in the State of Missouri.

3. Service of process in this cause was made by serving a copy of the summons and complaint upon Mr. Hugh J. Burns, District Sales Manager of defendant, at defendant's office located at 7920 Ward Parkway, Kansas City, Missouri ("Kansas City office").

4. The freight shipments described in plaintiff's complaint were not arranged, routed, diverted or otherwise handled by employees of defendant located in the State of Missouri.

5. Mr. Hugh J. Burns has been the District Sales Manager for defendant in its Kansas City office since June, 1967.

6. Defendant maintains one office in the State of Missouri located at the aforementioned address. This office is identified by a sign in the lobby and on the office door as an office of the defendant. Defendant has maintained an office in Kansas City, Missouri since 1967; and since 1973, this has been the only office in Missouri.

7. Defendant does not own or operate any railroad lines, warehouses, terminals or stations in the State of Missouri. Defendant's closest lines to the State of ·Missouri are located in the State of Alabama.

8. Defendant does not maintain any bank accounts within the State of Missouri.

9. Defendant leases approximately 750 square feet of office space in Kansas City, Missouri, at the aforementioned address. Defendant's lease of the office space was executed by defendant's vice president of sales in Jacksonville, Florida, and is for a three year term. Rental payments are made from defendant's office in Jacksonville, Florida, directly to the lessor.

10. Furniture and fixtures in the office space at the aforementioned address are valued at approximately $2300 and are owned by defendant.

11. Office supplies, with the exception of certain items of stationery, are either requisitioned from defendant's office in Jacksonville, Florida, or are shipped directly to the Kansas City office from suppliers in various locations at the order of the Jacksonville, Florida office.

12. Defendant's Kansas City office places a holiday greeting in Traffic Club magazine, a local periodical, at Christmastime. The $15.00 cost of this is born by Mr. Burns personally and is not reimbursed by the defendant. The Kansas City office is not advised or consulted concerning national advertising undertaken by defendant. Defendant maintains a listing in the white pages and yellow pages of the local telephone directory for its office. Approximately 100 complimentary wall calendars and a similar number of desk calendars are distributed by this office to local customers in the Kansas City, Missouri area annually.

13. The staff in defendant's Kansas City office consists of five people, including Mr. Burns. There are two additional salesmen and two clerk-stenographers. The aggregate payroll of these five employees is approximately $8600 per month.

14. Mr. Burns and the two salesmen are allotted a quarterly expense account of approximately $3000.

15. Defendant leases one automobile for the use of one of the salesmen who does extensive traveling. Said automobile is leased from Cherokee Rental, Kingsport, Tennessee.

16. Defendant leases an IBM computer terminal in its Kansas City office. This terminal ties into defendant's main computer in Jacksonville, Florida, and links the Kansas City office with other offices of defendant throughout the country.

17. Defendant's office accounts for an annual volume of freight traffic valued at approximately $40,000,000. This figure includes freight traffic that moves into or out of this sales district and freight traffic that moves between points outside of this district, but is controlled by a customer with headquarters in this district.

18. Approximately twice a year representatives from defendant's home office come to the Kansas City office. On these occasions, the home office representatives make calls with the local personnel and observe the operation of this office.

## II.

The testimonial and documentary evidence adduced at the evidentiary hearing revealed the following:

1. Mr. Burns testified that the purpose of the defendant's Kansas City office is to solicit business and to entertain customers.

2. He further testified that the Kansas City office offers the following services:
   a. Provides rate quotations
   b. Traces railroad cars
   c. Expedites the movement of cars
   d. Diverts the movement of cars for a change in route or destination
   e. Releases cars.

Mr. Burns stated that for all of these purposes, the Kansas City office is merely an intermediary between the customers and the home office. These services are accomplished through the use of a computer terminal that ties in with defendant's central computer in Jacksonville, Florida. Further, he testified that plaintiff does not use the Kansas City office for these purposes as it has its own computer that links up with defendant's home office.

3. Mr. Burns testified that the Kansas City office does not handle damage claims, select routes or prepare bills of lading. He indicated that he does contact customers regarding overdue accounts when directed to do so by his home office. He testified that he does not accept payment for these overdue accounts.

4. The parties stipulated that had he testified, Mr. John Goebel, a current employee of plaintiff, would have testified that during an earlier employment, he had been contacted by Mr. Burns regarding an overdue account and that he personally presented a check in payment of the freight bill and that Mr. Burns accepted the payment.

5. Mr. Burns testified that he had no recollection of this incident.

## III.

As indicated in this Court's earlier Order in this action filed November 8, 1979, jurisdiction must be premised upon the jurisdictional concepts embodied in § 506.150 RSMo. V.A.M.S.[1] In order to perfect service upon a foreign corporation under § 506.150, various courts require that there be a showing that the foreign corporation is amenable to the jurisdiction of Missouri's courts. *See, Ward v. Cook United, Inc.*, 521 S.W.2d 461 (Mo.App.1975); *Ponder v. Aamco Automatic Transmission, Inc.*, 536 S.W.2d 888 (Mo.App.1976); *Calandra v. National Broadcasting Co., Inc.*, 440 F.Supp. 13 (E.D. Mo.1977), aff'd. 573 F.2d 1313 (8th Cir. 1978). 440 F.Supp. 13 (E.D.Mo.1977) and *Wooldridge v. Beech Aircraft Corp.*, 479 F.Supp. 1041 (W.D.Mo.1979). And, the question of "amenability" has been held to depend upon whether the defendant corporation is "doing business" within the State of Missouri.

A foreign corporation is amenable to service—and a judgment *in personam*—by the terms of [§ 506.150] only if it is doing business in this state. . . . [§ 506.-150] . . . expresses . . . that a state has no power to assert an *in personam* jurisdiction over a foreign corporation which is not doing business within the forum at the time of service. *Ponder v. Aamco Automatic Transmission, Inc., supra*, 536 S.W.2d at 890 and 893.

As Judge Clark has properly noted, "[t]he *Ponder* decision indicates that a more restrictive 'doing business' test must be applied to actions that are commenced under § 506.150 [as compared to the long arm statute § 506.500], which, in effect, requires that some 'component' of the foreign corporation's corporate structure be physically present in Missouri." *Wooldridge v. Beech Aircraft Corp., supra*, 479 F.Supp. at 1047. Indeed, this Court observes that the *Ponder* court relied upon traditional expositions of

---

1. As noted in the prior Order, long arm jurisdiction is inappropriate here because the cause of action did not arise from any activities carried out by defendant within the State of Missouri. See, § 506.500(2) RSMo V.A.M.S.; and Missouri Rule of Civil Procedure 54.06(c).

the doing business test as expressed in older decisional authority. *See, Ponder v. Aamco Automatic Transmission, Inc., supra,* 536 S.W.2d at 890. As such, this Court has not been persuaded that the Missouri appellate courts have altered their interpretation of the "doing business" test as it is applied in § 506.150.[2]

The question of whether a foreign corporation is "doing business" in order to justify an assertion of *in personam* jurisdiction involves consideration of a number of factors. Missouri has not adopted a per se test of when a foreign corporation is doing business sufficient to make it amenable to personal service of process; but, there is adequate guidance in a case of this type. See, *State ex rel. Ferrocarriles Nacionales De Mexico v. Rutledge,* 56 S.W.2d 28, 38 (Mo. 1932); *Hayman v. Southern Pacific Co.,* 278 S.W.2d 749, 750–52 (Mo.1955); *Jennings v. McCall Corp., supra,* 320 F.2d at 70–72; *Ward v. Cook United, Inc., supra; Ponder v. Aamco Transmission, Inc., supra,* and *Wooldridge v. Beech Aircraft Corp., supra.*

Here, the stipulated facts and the testimony indicated that defendant is not "doing business" in Missouri to satisfy the authorities interpreting § 506.150. The only activities that defendant carried out through its Missouri office is the solicitation of business and the servicing of accounts. While this Court does not characterize defendants' activities as insubstantial, nothing of a policy or decisional nature that one would expect to find in the ordinary course of running a business is handled in Missouri.[3]

The conclusion that defendant is not doing business in Missouri for the purposes of § 506.150 is further supported given the fact that the cause of action here did not arise in Missouri. In *McCall,* the Eighth Circuit carefully considered the Missouri case law and observed that the Missouri courts consider the origin of the cause of action to be a very significant factor in determining the question of personal jurisdiction over foreign corporations. See, *Jennings v. McCall, Corp., supra,* 320 F.2d at 71–72. The clear implication of the Missouri decisions is that the Missouri courts have no interest in serving as a forum for claims that are totally unrelated to any activity carried out in Missouri. See, *Hayman v. Southern Pacific Co., supra,* 278 S.W.2d at 752.

Therefore, for the foregoing reasons, it is hereby

ORDERED that this cause be dismissed for lack of *in personam* jurisdiction.

---

**2.** This Court is convinced that defendant has had sufficient contacts with Missouri to satisfy the due process tests that would be used to determine the *constitutionality* of an assertion of *in personam* jurisdiction under an appropriate Missouri statute or judicial decision. See generally, *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945); and *McGee v. International Life Ins. Co.,* 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957); *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). But here, Missouri has no statute or judicial authority that would allow for an assertion of *in personam* jurisdiction under these circumstances. It is clearly Missouri's prerogative to impose limitations beyond those of due process. See, *Jennings v. McCall Corp.,* 320 F.2d 64 (8th Cir. 1963). And the *Ponder* and *Ward* decisions indicate that Missouri has not extended § 506.150 to the full extent possible as it has with § 506.500. See, *State ex rel. Deere & Company v. Pinnell,* 454 S.W.2d 889 (Mo. banc 1970); and generally *World-Wide Volkswagen Corp. v. Woodson, supra,* 444 U.S. 286 at pp. 291–294, 100 S.Ct. 559 at pp. 564–65.

**3.** The customer services that the Kansas City office provides are indistinguishable from the services provided in the *Hayman* decision. See, *Hayman v. Southern Pacific Co., supra,* 278 S.W.2d at 751.